600 A.2d 677

**William J. CROMIE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ANCHOR HOCKING CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 1991.

Decided Dec. 4, 1991.

38

Norman J. Barilla, for petitioner.

Michael Relich, for respondent.

Before McGINLEY and BYER, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

William J. Cromie (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed an order of a referee granting compensation benefits for a closed period beginning July 27, 1987, and ending March 17, 1988. He contends that the

referee's decision was based on findings of fact not supported by substantial evidence in the record. Our scope of review of a decision of the Board is to determine whether there were constitutional violations or errors of law and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

At a hearing on October 13, 1987, Claimant testified that he was employed as a laborer by the Shenango China Division of the Anchor Hocking Corporation (Employer). He testified that while he and another employee were lifting a "ware box" full of scrap, which weighed between eighty and one hundred pounds, "I got a real, real sharp pain in my back." Notes of Testimony, October 13, 1987 (N.T.) at 3. He immediately found his foreman and reported the injury. Claimant received treatment from his family physician the following week, and he was referred to an osteopathic surgeon the following month. He filed a claim petition on August 26, 1987. Claimant has not worked since the lifting incident. He testified that he still gets "real sharp, real bad pains on the right side of my back." N.T. at 10. He testified also that he never had any trouble with his back before the July 28 incident, although he worked for eighteen years as a clay cutter for the same employer (until two weeks before the incident), lifting between thirty and fifty tons of clay per day.

Claimant offered the deposition testimony of Anthony J. Elisco, D.O., an osteopathic physician engaged in family and surgical practice. Dr. Elisco first examined Claimant on August 25, 1987, and he became Claimant's treating physician. He testified that the claimant told him that as he was picking up some scrap boxes of clay he sustained an upper back injury. Claimant went to a Dr. Moran who took X-rays of his back, and they were negative for fractures. Deposition of Dr. Elisco, April 28, 1988, at 4. Dr. Elisco

testified that X-rays revealed that the claimant had "diffuse degenerative osteoarthritis, especially in the cervical vertebrae, and some changes in the thoracic and lumbar vertebrae." *Id.* at 5. Dr. Elisco's diagnosis was diffuse degenerative osteoarthritis aggravated by an injury at work. *Id.* at 7.

Employer offered the deposition and report of Mark Foster, M.D., a board-certified orthopedic surgeon, who examined Claimant on March 17, 1988, and reviewed an X-ray that Claimant brought to the examination. Dr. Foster testified that Claimant told him that when he picked up the box he felt a sharp pain in the right posterior thorax. Deposition of Dr. Foster, September 19, 1988, at 5. The doctor said that Claimant also told him of some low back and spine pain after the accident. *Id.* at 7. The doctor said that the thoracic pain was Claimant's principal complaint at the time of examination.

The referee made the following pertinent findings of fact:

10. [When Dr. Foster examined the claimant,] he complained of pain in his right posterior thorax. Dr. Foster described the claimant's pain location as his chest wall. Dr. Foster felt that the claimant may have pulled a muscle or had a rib fracture in his chest wall area, but at the time of his examination he could not find any objective basis for a connection between the claimant's alleged injury and his physical complaints.

11. Dr. Foster also found X-ray evidence of degenerative changes in the claimant's spine but he did not believe that these changes were the source of his pain. Dr. Foster felt that the claimant may have a pulmonary problem which would not be related to his alleged work injury.

12. The claimant had a work related injury on July 28, 1987 during the course of his employment by the defendant. *The nature of this injury is lumbo-sacral sprain.* This Finding of Fact is based upon the mechanics of the injury incident as described by the claimant, the history of initial pain in his low back and spine which he gave to

Dr. Foster, and Dr. Foster's testimony that the claimant may have pulled a muscle.

13. The claimant's injury at work did not aggravate the pre-existing degenerative osteoarthritis in his spine. In making this Finding of Fact I have rejected the testimony of Dr. Elisco. I have accepted Dr. Foster's testimony that the claimant's pain cannot be related to his pre-existing problem.

14. The claimant was totally disabled because of his work related injury from July 29, 1987 until he was examined by Dr. Foster on March 17, 1988.

15. The claimant had fully recovered from his work related injury by March 17, 1988 and as of that date became able to return to his pre-injury work for the defendant without any restriction or limitation caused by that injury.

Referee's Decision, February 2, 1989, at 3–4. (Emphasis added.)

Claimant contends that the finding that he had fully recovered is inconsistent and not supported because the referee must have credited the testimony of Dr. Elisco concerning the original cause of the injury (i.e., aggravation of previously existing arthritis) in order to find that Claimant suffered any disability resulting from a work-related injury. This interpretation ignores the fact that the referee expressly found in Finding of Fact No. 12 that the original injury was a lumbo-sacral sprain.

█ In our view, the principal difficulty with the referee's opinion is that Finding of Fact No. 12 is based on no medical evidence in the record. Dr. Elisco's opinion was that Claimant's problems stemmed from arthritis. Although Dr. Foster mentioned Claimant's reporting some back and spine pain shortly after the initial upper back pain, Dr. Foster offered no opinion as to the nature and cause of that pain. The referee's finding that the original injury was a lumbo-sacral sprain constituted a medical diagnosis *by the referee*. Any claimant would be aggrieved by a referee's incorrect and unsupported finding as to the nature of a

disabling injury, even if the referee ordered a limited grant of benefits on the basis of that finding. Claimant here has preserved this question by arguing that the referee must have credited Dr. Elisco's testimony in order to find any basis for awarding compensation.

 Where there is no obvious causal connection between an injury and the alleged work-related cause, that cause must be established by unequivocal *medical evidence*. *Lewis v. Commonwealth,* 508 Pa. 360, 365, 498 A.2d 800, 802 (1985). Similarly, where the work-related nature of the initial injury is obvious, but its relation to ongoing disability may not be, there is a need for more than lay evidence, i.e., for medical evidence. *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall),* 517 Pa. 98, 102, 534 A.2d 1389, 1390–91 (1987). Unequivocal medical evidence is evidence that establishes to a reasonable degree of *medical certainty* that the injury was in fact work-related. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works),* 515 Pa. 315, 324, 528 A.2d 580, 585 (1987) (plurality opinion).

 The referee, however, is not competent to make independent determinations to a reasonable degree of medical certainty based on the "mechanics of the injury incident" or the "history of initial pain...." Referee's Decision, Finding of Fact No. 12. Moreover, Dr. Foster's testimony that Claimant may have pulled a muscle, on which the referee partially relied, related only to the claimant's complaints of *thoracic* pain; the doctor offered no such testimony regarding the reported back and spine pain. Therefore, the referee's finding that the initial injury was a "lumbosacral sprain" is not supported by substantial evidence in the record. Consequently, the referee's determination that the disability terminated as of the time of the examination by Dr. Foster also lacks support.

 As the claimant notes, in *Jasper v. Workmen's Compensation Appeal Board,* 498 Pa. 263, 445 A.2d 1212 (1982), where a referee had ordered compensation for a

closed period, our Supreme Court ordered a remand for determinations on crucial points. The court stated: "At the very least the findings and conclusions of the fact finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of the underlying principles of substantive law to the evidence." *Jasper*, 498 Pa. at 266, 445 A.2d at 1213. In the present case, after our rejection of the referee's crucial finding concerning the original injury, we cannot determine what the nature of that injury was. Accordingly, we shall remand this matter for further proceedings to establish the nature of that injury, based on acceptable medical evidence.[1]

The order of the Board is vacated, both as to the affirmance of the grant of benefits on the claim petition and as to the affirmance of the termination of benefits, and this matter is remanded for further proceedings.

### ORDER

AND NOW, this 4th day of December, 1991, the order of the Workmen's Compensation Appeal Board at Docket No. A89–538, dated July 17, 1990, is vacated, and this matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

---

1. The compensation authorities have discretion under Section 314 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 651, to order another examination of the claimant, to be paid for by the employer. The record indicates that the claimant has so far refused to undergo tests such as a myelogram or an MRI, which might help to identify the reason for the claimant's disabling thoracic pain.