Donald McCOLE, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (BARRY BASHORE, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 3, 1999.

Decided Jan. 20, 2000.

---

Irving L. Abramson, Radnor, for petitioner.

Michael R. Bonshock, Harrisburg, for respondent.

Before COLINS, J., FRIEDMAN, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Donald McCole (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB), affirming the decision of a workers' compensation judge (WCJ) to deny Claimant workers' compensation benefits for facial disfigurement. We affirm in part, vacate in part and remand.

On June 20, 1995, while in the scope of his employment as a truck driver, Claimant was involved in an accident in which his truck rolled over onto its side pinning Claimant inside for nearly two hours.[1] (WCJ's Findings of Fact, No. 7a.) As a result, Employer's insurer issued a Notice

---

1. Employer did not dispute that the cab of the truck collapsed on Claimant during the accident. (N.T. at 38, R.R. at 54.)

of Compensation Payable on behalf of Employer, acknowledging Claimant's injury as a "crush injury left leg and fractured seventh rib." (WCJ's Findings of Fact, No. 1.) On February 22, 1996, Claimant filed a claim petition claiming "a 'crush injury' to his left leg and knee, a ruptured spleen and post-traumatic stress disorder...." (WCJ's Findings of Fact, No. 2.) Employer filed an answer denying additional injuries, and the petition was assigned to WCJ Knighton for hearing.

At the May 15, 1996 hearing, WCJ Knighton viewed Claimant's face.[2] (WCJ's Findings of Fact, Nos. 3, 5.) At that same hearing, Claimant amended his claim petition to include claims for scarring on his forehead and for carpal tunnel syndrome. (WCJ's Findings of Fact, No. 5; N.T. at 30 and 39, R.R. at 46 and 55.) Upon WCJ Knighton's retirement, the matter was reassigned to WCJ Crum, who, on January 30, 1998, "determined that the evidentiary file in this matter was closed." (WCJ's Findings of Fact, No. 6.)

2. With respect to the scars on his forehead, Claimant's testimony at the hearing was as follows:

WCJ Knighton: Was Dr. Houck treating you for your lacerations on your forehead?
Claimant: No. They said there was nothing they could do for those. They would heal up and there would just be scars.

(N.T. at 35, R.R. at 51.) The testimony continued:

WCJ Knighton: Now, for the scars on your forehead. How did you – did you hit the windshield or something?
Claimant: Well, the roof of the truck collapsed on top of me ... And that and the windshield—actually the passenger window was the only thing that wasn't busted in the truck.
WCJ Knighton: Did you get lacerations on your forehead?
Claimant: Yes. Right. I've got two lacerations here (indicating) and my ear—I had a piece of my ear was cut out that they didn't do anything to and that they said they couldn't do anything to it. It would just heal on its own.
WCJ Knighton: The lacerations on your right forehead?
Claimant: Left.
WCJ Knighton: Your left forehead.
Claimant: Left forehead and my left ear and that—he said there was nothing they

By decision of May 18, 1998, WCJ Crum found that Claimant sustained the following injuries as a result of his work-related accident: "specific loss of use of the left leg; crush injury of the left leg and left knee; ruptured spleen; fractured seventh rib; aggravation of pre-existing degenerative disc disease at the level of C5–C6 and new disc injury to the levels of C4–C5 and C6–C7 with cervical radiculopathy; and post traumatic stress disorder." (WCJ's Order, R.R. at 10.) However, WCJ Crum denied and dismissed Claimant's claim for disfigurement benefits. (WCJ's Order; R.R. at 10.) With respect to that claim, WCJ Crum found:

There is insufficient evidence to establish that... Claimant suffered serious, permanent and unsightly scars to his face. Dr. Black described the measurements of the scars at page 28 of his deposition, but provides no other information about them.[3] Additionally, no pictures [4] are in the record, nor are the

could do there. They would just heal up on their own.
(N.T. at 35–36, R.R. at 52–53.)

3. Claimant's physician, Kevin P. Black, M.D., described Claimant's scars as follows: "He has three scars in his left upper forehead. They measure respectively an inch and a half, an inch and a quarter and three-quarters of an inch." (Deposition of Dr. Black at 28, R.R. at 93.)

4. Our supreme court has downplayed the importance of photographs, explaining:
Even if photographs, proverbially worth thousands of words, are included in the record, their accuracy depends on lighting, camera quality, skill of the photographer, and other factors which affect the truth they convey.
*Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt)*, 531 Pa. 186, 191, 611 A.2d 1187, 1190 (1992). *See also American Chain & Cable Co. v. Workmen's Compensation Appeal Board (Weaver)*, 70 Pa.Cmwlth. 579, 454 A.2d 211, 213 (1982), where we held that the claimant had adduced sufficient evidence despite discounting his photographic evidence because two photographs were not of his face and one photograph was "woefully inadequate" to show scarring of the claimant's face and head.

scars described on the record.[5] (WCJ's Findings of Fact, No. 21.) Therefore, the WCJ concluded that "Claimant has not sustained his burden of proof with respect to his claim for disfigurement benefits." (WCJ's Conclusions of Law, No. 8.)

Claimant appealed from that portion of WCJ Crum's decision denying Claimant's claim for disfigurement, arguing that WCJ Crum's conclusion that Claimant had not sustained his burden of proof failed to take into account that WCJ Knighton had viewed Claimant's scarring. (O.R., Appeal from Judge's Findings of Fact and Conclusions of Law.) In affirming the denial of benefits for disfigurement, the WCAB noted that WCJ Crum rendered her decision following "additional hearings and receipt of evidence...."[6] (WCAB's op. at 2.) The WCAB explained that, where the WCAB "has taken no additional testimony, [it] is required to accept the facts as found by the WCJ if they are supported by competent evidence." (WCAB's op. at 3.) The WCAB then stated that, because "Claimant presented no medical evidence to sup-

port his appeal," the WCAB "is constrained to agree with the WCJ that there is no evidence of record from which the WCJ could have concluded that the Claimant had met his burden to establish that his facial scars were serious and permanent." (WCAB's op. at 4.)

On appeal to this court,[7] Claimant argues that he met his burden of proof through the medical testimony of his treating physician and/or WCJ's Knighton's viewing of his scars.[8] We disagree that Claimant met his burden of proving that his facial scars were serious and permanent based upon the present record. However, we conclude that WCJ Crum erred in concluding that Claimant had not met his burden of proof without viewing Claimant's scarring for herself.

■ Section 306(c)(22) of the Workers' Compensation Act[9] (Act) provides compensation for "serious and permanent disfigurement of the head, neck or face, of such a character as to produce an unsightly appearance, and such as is not usually

---

5. Although Dr. Black's description may not be the epitome of detail, our supreme court has pointed out that even detailed descriptions are "woefully inadequate" to convey the visual perception in a claim for disfigurement. *Hastings*, 531 Pa. at 191, 611 A.2d at 1190. In that case, our supreme court explained:

> Even if care is taken to develop detailed and accurate descriptions of disfigurement in the record, words alone seldom capture the subjective elements fundamental to the [WCJ's] decision. While we can describe the length, location and color of a scar, can we adequately verbalize the impact of these factors which combine to create a degree of "ugliness," if you will, for which a claimant should receive a certain compensation?

*Id.* (quoting *American & Chain Cable*, 454 A.2d at 214 n. 4).

6. The record, however, indicates that WCJ Crum did **not** conduct "additional hearings;" rather, WCJ Crum's decision indicates that the only hearing occurred on May 15, 1996 (which was the hearing before WCJ Knighton). (*See* WCJ's decision at 2.) WCJ Crum did receive additional evidence in the form of the depositions of the parties' medical experts.

7. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency law, 2 Pa.C.S. § 704.

8. Claimant also argues that he was denied due process of law because (1) his case was reassigned following the retirement of WCJ Knighton to WCJ Crum in disregard of 34 Pa.Code § 131.22 and (2) WCJ Crum did not grant Claimant's request for additional hearings. (Claimant's brief at 4.) However, Claimant's failure to raise these arguments before the WCAB and in his petition for review filed with this court precludes our review of them. *See* Pa. R.A.P. 1551; *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 127 Pa.Cmwlth. 587, 562 A.2d 437 (1989); *Associated Town "N" Country Builders, Inc. v. Workmen's Compensation Appeal Board (Marabito)*, 95 Pa.Cmwlth. 461, 505 A.2d 1358 (1986), *aff'd per curiam*, 515 Pa. 564, 531 A.2d 425 (1987).

9. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(22).

incident to the employment...." To receive an award under this section, a claimant must prove that the disfigurement (1) is serious and permanent, (2) results in an unsightly appearance and (3) is not usually incident to his or her employment. *Carlettini v. Workers' Compensation Appeal Board (City of Philadelphia)*, 714 A.2d 1113 (Pa.Cmwlth.1998).

Generally, competent medical evidence is necessary to support a finding of fact that disfigurement is permanent. *East Coast Shows v. Workmen's Compensation Appeal Board*, 37 Pa.Cmwlth. 312, 390 A.2d 323 (1978). However, we have held "that medical evidence is not necessary to support a finding of permanence where circumstances permit the fact-finder to determine from his own observations whether the disfigurement is permanent." *Purex Corp. v. Workmen's Compensation Appeal Board*, 66 Pa.Cmwlth. 499, 445 A.2d 267 (1982).[10] We have also acknowledged that WCJs and the WCAB may use their "knowledge gained in experience regarding the fading or permanence of laceration scars."[11] *Koppers Co. v. Workmen's Compensation Appeal Board (Martin)*, 80 Pa.Cmwlth. 288, 471 A.2d 176, 178 n.3 (1984).

Thus, we determined that permanent disfigurement was established absent medical evidence where the WCJ viewed the claimant more than fourteen months after the injury. *Purex Corp.* Similarly, we held that medical evidence was not necessary to determine permanency where the WCJ viewed the claimant nine months after the injury and the WCAB viewed the claimant nearly twenty-three months after the injury. *See Carlettini. See also Koppers Co.* (holding that medical evidence was not necessary where the WCJ viewed the scar six months after the injury and the WCAB

viewed the scar eleven months after the injury); *City of Philadelphia, Risk Management Division v. Workmen's Compensation Appeal Board (Harvey)*, 690 A.2d 1293 (Pa.Cmwlth.), *appeal denied*, 549 Pa. 729, 702 A.2d 1061 (1997) (holding that medical evidence was not necessary where the WCJ viewed the scars slightly over four months after the injury and the WCAB viewed the scars nineteen months after the injury).

Significantly, in each of the above-cited cases, the WCJ viewed the claimant's disfigurement. Indeed, in a disfigurement case, "the most meaningful evidence there could possibly be" is the fact-finder's "view of the disfigurement itself." *American Chain & Cable Co. v. Workmen's Compensation Appeal Board (Weaver)*, 70 Pa. Cmwlth. 579, 454 A.2d 211, 214 (1982). It is the viewing of the scar that the WCJ and WCAB "necessarily rely primarily on...to determine its seriousness." *Koppers Co.*, 471 A.2d at 177. In *American Chain & Cable*, we articulated the essential and indispensable character of the WCJ's view of the claimant in disfigurement cases:

In any disfigurement case, the [WCJ] inevitably bases his findings of fact and determination of compensability on his personal observation of the scarring or damage to the normal appearance of the claimant. Unlike other compensable injuries **disfigurement is not best determined by expert testimony or by testimony from witnesses describing what the claimant's disfigurement looks like. Rather, it is the physical appearance of the claimant himself which constitutes the evidence considered by the [WCJ].** It is precisely because this essential physical evidence

---

10. *Purex* was overturned in part on other grounds by our decision in *American Chain & Cable*.

11. In this regard, we note that Claimant testified that, in addition to suffering facial lacerations, a piece of his ear was cut out. (*See*

N.T. at 36, R.R. at 52.) Having a piece of one's ear cut out would appear to be an example of scarring within the realm of a WCJ's knowledge and experience to determine seriousness, permanence and unsightliness.

considered by the [WCJ] is difficult to preserve for the record that disfigurement cases are troublesome. The recitation of verbal descriptions of a scar is helpful but often woefully inadequate to accurately preserve evidence which is received by the [WCJ] by his visual perception of that physical evidence.

*Id.* at 214.[12] (Emphasis added.)

■ Unlike other types of workers' compensation cases, in a disfigurement case, the WCJ relies almost "exclusively on visual evidence...." *Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt),* 531 Pa. 186, 191, 611 A.2d 1187, 1190 (1992). Indeed, "it is the physical appearance of the claimant himself and the unsightliness of the disfigurement which constitutes the evidence considered by the [WCJ]." *Id.*

■ Here, WCJ Knighton viewed Claimant's scars; however, as a result of his retirement, WCJ Knighton was not the fact-finder in this case.[13] Instead, WCJ Crum served as fact-finder despite never viewing Claimant. Absent a view of Claimant's alleged disfigurement, WCJ Crum could not have considered the evidence of Claimant's appearance and, thus, was not in a position to determine whether the circumstances permitted her, without the need for medical evidence, to determine, from her own observations and based upon the passage of time, whether Claimant's disfigurement was serious, permanent and unsightly.

■ Further, the WCAB perpetuated the error by failing to conduct its own viewing. The "only meaningful way" for the WCAB to determine whether the WCJ's opinion is supported by substantial competent evidence is for the WCAB to view the scar.[14] *American Chain & Cable,* 454 A.2d at 214. Without viewing Claimant's face, the WCAB could not determine whether WCJ Crum's decision dismissing Claimant's disfigurement claim was supported by substantial evidence. Thus, in failing to conduct its own view of Claimant, the WCAB also erred.

Accordingly, we vacate the WCJ's order to the extent it denies Claimant benefits for permanent disfigurement, and we remand this case so that the fact-finder may view Claimant's scars to determine wheth-

---

12. In *American Chain & Cable,* the WCJ concluded that the claimant's scarring was serious and permanent based upon evidence remarkably similar to that relied upon by Claimant here. In that case, apart from the WCJ's view of the claimant's scars, the WCJ relied upon the record description of the claimant's scars by his counsel. Here, Claimant relies upon the same type of evidence: WCJ Knighton's view of his scars and the description by Dr. Black.

13. Claimant had every reason to believe that WCJ Knighton would make findings, based upon his viewing of Claimant's scars, and convey those findings to WCJ Crum. Thus, we need not decide whether claimants bear the burden of presenting themselves to a WCJ for viewing. *Cf. City of Philadelphia v. Workers' Compensation Appeal Board (Mercer),* 717 A.2d 26 (Pa.Cmwlth.1998) (ordering the WCAB to conduct a new hearing with the claimant present so that the WCAB would have the opportunity to view the claimant's disfigurement if the WCAB could not verify

that the claimant was present at the original hearing).

14. In *American Chain & Cable,* we limited our holding to cases where the WCJ made no findings actually describing the disfigurement for the benefit of a subsequent review and appeal to the WCAB. Subsequently, in *Hastings,* 531 Pa. at 191, 611 A.2d at 1190, our supreme court held that, even in a case where the WCJ provides a detailed description of the disfigurement, such a detailed description is "woefully inadequate to preserve the evidence visually perceived by the [WCJ] when he faces the claimant." Thus, that court held that "[t]ranslation of the visual impact of a disfigurement into a monetary award involves a legal element which is subject to review by the WCAB on the basis of its own view of a claimant's visage." *Id.* at 192, 611 A.2d at 1190. We have interpreted *Hastings* as requiring the WCAB to view the claimant in an appeal from an award of benefits in a disfigurement case. *See City of Philadelphia v. Workers' Compensation Appeal Board (Mercer),* 717 A.2d 26 (Pa.Cmwlth.1998).

er the circumstances of his alleged disfigurement permit Claimant to meet his burden of proof without medical evidence.

## *O R D E R*

AND NOW, this 20th day of January, 2000, the order of the Workers' Compensation Appeal Board (WCAB), dated August 18, 1999, is hereby vacated and remanded to the WCAB with instructions to remand this case to the WCJ to view Claimant's alleged disfigurement and to determine whether the circumstances of that alleged disfigurement permit Claimant to meet his burden of proof as to its seriousness, permanence and unsightly appearance without medical evidence. In all other respects, the order of the WCAB is affirmed.

Jurisdiction relinquished.