Ronald LEWIS, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (Disposable Products), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 2004.

Decided July 13, 2004.

Picard Losier, Philadelphia, for petitioner.

Kate A. Smith, Exton, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Ronald Lewis (Claimant) petitions for review of the October 30, 2003, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of the workers' compensation judge (WCJ) to deny Claimant's claim petition.

On August 28, 1997, Claimant filed a claim petition alleging that he was struck in the head by a metal bar while working as a machine operator on July 17, 1997, and, as a result, sustained injuries described as: "head[;] face[;] neck[;] head-aches[;] blurry vision[;] ringing in ears[;] and large hematoma on forhead [sic], may need surgery to remove." (R.R. at 1a.) Claimant sought, *inter alia*, benefits for total disability and disfigurement. (R.R. at 2a.) Disposable Products (Employer) filed an answer denying the allegations in Claimant's claim petition.

At an October 30, 1997, hearing before a WCJ, Claimant testified regarding his injuries and treatment. Claimant testified that, because of the injury at work, when he was struck in the head by a metal bar, he had a large knot on his head, and he experienced headaches and ringing in his ear. (R.R. at 9a, 10a.) Claimant stated that he had undergone plastic surgery to remove the knot on his head only three days earlier and that he currently had swelling and stitches as a result of that surgery. (R.R. at 10a–11a, 17a–18a.) When Claimant's counsel began to describe what he viewed on Claimant's visage, Employer's counsel objected, stating that the WCJ would have to make an observation regarding Claimant's disfigurement claim, rather than have Claimant's counsel describe it on the record. (R.R. at 11a.) The WCJ responded that he would describe Claimant's disfigurement for the record at some later point in the proceedings. (R.R. at 11a.) Claimant then proceeded to testify regarding his claim for total disability, including the nature of his injuries, his treatment and his lost time.

After Claimant's testimony, Claimant's counsel asked the WCJ to view Claimant's disfigurement, but Employer's counsel objected, stating it would be premature because of Claimant's recent surgery. (R.R. at 27a.) The WCJ stated that he wanted pictures of the knot before and after the surgery and, because the standard for receipt of benefits is whether the disfigure-

ment is permanent in nature,[1] he would not look at the injury until the parties returned for a hearing in April of 1998. (R.R. at 28a.)

Ultimately, Claimant presented medical testimony in support of his claim through the November 16, 2000, deposition testimony of Yves J. Jerome, M.D.[2] Dr. Jerome testified that he first treated Claimant on August 18, 1997, and he diagnosed Claimant as suffering a cerebral concussion, traumatic hematoma of the right frontal region, tinnitus, blurry vision and cervical strain as a result of the work incident of July 17, 1997. (R.R. at 51a–52a, 54a.) Dr. Jerome referred Claimant to a neurologist to evaluate Claimant's cerebral concussion and to a plastic surgeon because Claimant was self-conscious about the "large horn on his forehead...." (R.R. at 54a.) Dr. Jerome stated that when he last examined Claimant on October 8, 1999, Claimant had residual complaints of headache and ringing in his ear; Claimant also had a post-surgical permanent residual scar measuring four centimeters by three millimeters in the right frontal region. (R.R. at 56a.) Dr. Jerome opined that Claimant could not perform his pre-injury employment because of his injury and the industrial noise to which Claimant was exposed at work. (WCJ's 2/24/03 Findings of Fact, No: 6(c).) Dr. Jerome testified specifically that Claimant was totally disabled from July 17, 1997, until October of 1999, when Dr. Jerome released Claimant to a position with the U.S. Post Office. (R.R. at 56a; see R.R. at 54a.)

In deposition testimony taken June 24, 2002, Claimant confirmed that he has been working at the U.S. Post Office since October of 1999. (R.R. at 99a.) Claimant also testified that he did not work from July of 1997 through October of 1999, and that he collected unemployment benefits for six months following his work-related injury. (R.R. at 102a; see WCJ's 2/24/03 Findings of Fact, Nos. 6(f)-(g).) However, in the employment application filled out by Claimant in connection with his post office job, Claimant indicated that, from March of 1989 through October of 1999, he worked thirty-five hours per week, earning ten to eleven dollars per hour, at L & E Electronics. (WCJ's 2/24/03 Findings of Fact, No. 6(e).)

Defending against the claim petition, Employer offered the January 10, 2001, deposition testimony of James M. Orsi, M.D. Dr. Orsi testified that he diagnosed Claimant with a contusion hematoma to his forehead as a result of the July 17, 1997, incident and that he released Claimant to return to full duty on July 23, 1997, and again on July 28, 1997. (WCJ's 2/24/03 Findings of Fact, No. 6(a).) Dr. Orsi also testified that Claimant wanted the bump

---

1. Employer's counsel indicated that the parties might be able to reach an agreement on the disfigurement and then the issue in the case would concern only the nature, extent and length of disability. (R.R. at 28a, 29a.)

2. Although an April 30, 1998, hearing date is listed, the only record was created at the October 30, 1997, hearing. (WCAB's 2/23/00 op. at 2; see O.R.) Eventually, on September 21, 1998, the WCJ dismissed Claimant's claim petition. The WCJ found that Claimant's alleged injuries were not obviously related to the work incident, and, therefore, Claimant was required to present unequivocal medical testimony in support of his claim petition, but he failed to do so. (WCJ's 9/21/98 Findings of Fact, Nos. 6, 8; WCJ's 2/24/03 Findings of Fact, No. 4.) The WCJ also noted that the Special Rules of Practice and Procedure require the moving party to take a medical expert's deposition within ninety days of the date of the first scheduled hearing, 34 Pa. Code § 131.63(c). (WCJ's 9/21/98 Findings of Fact, Nos. 9, 10.) Claimant appealed to the WCAB, which vacated the WCJ's decision and remanded the matter to the WCJ to allow Claimant to present medical testimony. (WCAB's 2/23/00 op. at 5, R.R. at 43a.)

on his forehead removed, and Dr. Orsi thought it would go away without having to be surgically excised. (R.R. at 73a.) On cross-examination, Dr. Orsi admitted that, after he discharged Claimant, he treated Claimant again on August 15, 1997, and, at that time, Claimant's symptoms had changed. In addition to the hematoma that was still present, Claimant now was complaining of headaches, drooling and slurred speech, and Dr. Orsi referred him to a neurologist.[3] (R.R. at 80a–82a.) Additionally, although Dr. Orsi originally opined that Claimant's hematoma would go away within two weeks, Dr. Orsi admitted that it was still present at least thirty days after Claimant's date of injury and that Claimant's hematoma was unusual. (R.R. at 83a, 85a.) Nevertheless, Dr. Orsi did not refer Claimant to a plastic surgeon. (R.R. at 85a.)

The WCJ credited the testimony of Dr. Orsi and the representation contained in Claimant's employment application with the U.S. Post Office, and the WCJ rejected the testimony of Dr. Jerome and Claimant where it conflicted with these two items, setting forth nine bases for the rejection. (WCJ's 2/24/03 Findings of Fact, No. 6(a-i).) Accordingly, the WCJ denied Claimant's claim petition, concluding that Claim-

ant failed to produce substantial competent evidence that he sustained a disabling work injury on July 17, 1997, which prevented him from working until October of 1999. (WCJ's 2/24/03 Conclusions of Law, No. 2.) Claimant appealed to the WCAB, which affirmed.

Claimant now petitions this court for review of the WCAB's order.[4] Claimant argues that the WCJ's decision is not well-reasoned and fails to address Claimant's facial disfigurement.[5]

■ Here, the WCJ rejected Dr. Jerome's testimony that Claimant sustained a disabling work-related injury and, instead, accepted Dr. Orsi's conflicting testimony, as well as the representation contained in Claimant's employment application with the U.S. Post Office.[6] The WCJ may accept or reject the testimony of any witness in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378 (Pa.Cmwlth.1997), *appeal denied*, 553 Pa. 701, 718 A.2d 787 (1998). Nevertheless, Claimant argues that the WCJ did not adequately explain the reasons for his credibility determinations,

---

3. However, after the examination on August 15, 1997, Dr. Orsi again released Claimant to full duty. (R.R. at 72a.)

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. Claimant also argues that the WCJ's decision is unsupported by the record. Because of our determination with respect to the reasoned decision issue, it is premature to consider this argument. However, upon review of the record, we note that it contains substantial evidence to support the WCJ's deci-

sion, once the WCJ properly explains his acceptance of that evidence.

6. In a claim petition proceeding, the claimant bears the burden of proving all the necessary elements. *SCI Waymart v. Workers' Compensation Appeal Board (Feldman)*, 766 A.2d 900 (Pa.Cmwlth.2000). Additionally, where there is no obvious causal connection between an injury and the alleged work-related cause, that cause must be established by unequivocal medical evidence. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 144 Pa.Cmwlth. 37, 600 A.2d 677 (1991). Similarly, where the work-related nature of the initial injury is obvious, but its relation to ongoing disability may not be, there is a need for medical evidence. *Id.*

and, thus, the WCJ's decision is not well-reasoned. We agree.

Section 422(a) of the Workers' Compensation Act (Act)[7] provides, in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphases added).

Our supreme court, in discussing what constitutes an adequate explanation for a WCJ rejecting competent evidence in favor of conflicting evidence, has distinguished between live testimony and deposition testimony. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003). The supreme court stated, "where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately reasoned." *Id.* at 77, 828 A.2d at 1053. However, with respect to witnesses who provide conflicting testimony via deposition, the supreme court held that the WCJ must articulate some objective basis for her credibility determination.[8] Thus, the supreme court stated,

> The point is that, absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, *some articulation of the actual objective basis* for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Id.* at 78, 828 A.2d at 1053 (emphases added). With respect to the critical medical evidence at issue here, the WCJ's decision fails to satisfy this standard. Although the WCJ set forth nine "reasons" for crediting Dr. Orsi's testimony over that of Dr. Jerome,[9] these "reasons" actually

---

7. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.

8. The supreme court noted that there are countless objective factors which may support a decision to accept certain evidence while rejecting other evidence, such as: an expert witness's opinion may be based upon erroneous factual assumptions; an expert may have had less interaction with the claimant, or the interaction may have been in a less timely fashion; an expert may betray a bias or interest in the matter; an expert may be unqualified or less qualified than the opposing party's expert; or the expert may be impeached. *Daniels.*

9. Specifically, the WCJ found:

a) Dr. Orsi explained that the claimant had sustained a contusion hematoma to his forehead on July 17, 1997 but was released to return to work without restriction initially on July 23, 1997, again July 28, 1997, at which time he was discharged from care.

b) The claimant was seen at Montgomery Hospital with a diagnosis of forehead con-

are nothing more than a summation of the evidence,[10] and they do not provide an "actual objective basis" for the WCJ's credibility determinations. Although the findings point to telling portions of the record and allow one to *imagine* how the WCJ reached his conclusion, the purpose of a reasoned decision is to spare the reviewing court from having to *imagine* why the WCJ believed one witness over another. *Daniels*. Under such circumstances, we must conclude that the WCJ's decision does not meet the standard set forth in section 422(a) of the Act, 77 P.S. § 834, *see Daniels*, and we must remand this matter to the WCJ to provide an objective basis for his credibility determinations so that we might conduct effective appellate review of the decision.[11]

Claimant also argues that the WCJ's decision fails to address his claim for facial disfigurement. However, because Claimant failed to raise this argument before the WCAB or in his petition for review filed with this court, Claimant has waived this issue.[12] *See* Pa. R.A.P. 1551(a) and 1513.

Accordingly, we affirm the decision and order of the WCAB to the extent that it does not grant Claimant benefits for disfigurement, and we vacate the WCAB's decision and order and remand this matter to the WCAB to remand to the WCJ for a well-reasoned decision pertaining to Claimant's claim for disability benefits resulting from his July 17, 1997, work-related injury.

Judge LEADBETTER dissents.

---

tusion with hematoma but demonstrated a full range of motion of the cervical spine.
c) After being discharged from care by Centramed the claimant began treating with Dr. Jerome who opined that the claimant was disabled from returning to his pre-injury employment because "of his injury and the industrial noise."
d) The claimant testified that prior to his work related injury he found the noise in his work place unbearable.
e) The claimant filled out an application for employment with the United States Postal Service indicating that he had worked at L & L Electronics from March of 1989 through October of 1999, thirty five hours a week earning $10.00 to $11.00) [sic] an hour.
f) The claimant testified that he received unemployment compensation for six months following his work related injury.
g) The claimant alleged that he had absolutely no income from 1997 through October of 1999.
h) The claimant testified that he was allowed to live in his apartment for free, was given free food, and borrowed money to get to physical therapy during his alleged period of disability.
i) The claimant has an Associate Degree in Electronics, which he obtained prior to his work-related injury.

(WCJ's 2/24/03 Findings of Fact, No. 6(a-i).)

10. In *Daniels*, our supreme court held that a WCJ will not have issued a reasoned decision where he or she merely summarizes the evidence and then simply announces which evidence he or she accepts and rejects.

11. We point out that some of Claimant's testimony was live and some was by deposition. Therefore, to the degree that Claimant's deposition testimony was relevant to the WCJ's credibility determinations relating to the medical evidence, the WCJ must provide an objective basis for his credibility determinations regarding Claimant's deposition testimony as well.

12. Nevertheless, we note that Claimant could not prevail on this issue. Because he failed to present himself to the WCJ for any further viewing, and failed to present any additional visual evidence, as requested by the WCJ at the October 30, 1997, hearing, Claimant could not sustain his burden of proving entitlement to benefits for disfigurement. *See* section 306(c)(22) of the Act, 77 P.S. § 513(22); *McCole v. Workers' Compensation Appeal Board (Barry Bashore, Inc.)*, 745 A.2d 72 (Pa.Cmwlth.2000).

### ORDER

AND NOW, this 13th day of July, 2004, the order of the Workers' Compensation Appeal Board (WCAB), dated October 30, 2003, is hereby affirmed in part and vacated in part and remanded to the WCAB to remand to the workers' compensation judge for proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.