THE COMMONWEALTH COURT OF PENNSYLVANIA

Keister Miller Investments LLC,           :
                        Petitioner        :
                                          :
            v.                            :   No. 1303 C.D. 2017
                                          :   SUBMITTED:  January 12, 2018
Workers' Compensation                     :
Appeal Board (Hoch),                      :
                        Respondent        :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                          FILED:  March 23, 2018

Keister Miller Investments, LLC (Employer) petitions for review of the August 30, 2017 order of the Workers' Compensation Appeal Board (Board) affirming in part and modifying in part, the decision of the Workers' Compensation Judge (WCJ), which awarded Wesley Hoch (Claimant) workers' compensation benefits for a disfigurement resulting from a work-related injury under Section 306(c)(22) of the Workers' Compensation Act (Act).[1]  Employer argues that the Board erred in modifying the WCJ's decision by increasing the number of compensable weeks of disfigurement benefits awarded to Claimant.  We vacate and remand for further explication and analysis.

## I.  Background

On December 12, 2015, while in the course and scope of his employment as a truck driver for Employer, Claimant sustained a broken nose and a laceration to

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §513(22).

the right side of his head when the truck he was driving rolled over. WCJ's Op., 6/13/17, Finding of Fact (F.F.) No. 7. On that same date, Employer filed a medical-only notice of temporary compensation payable (no loss of wages) under Section 406.1(d)(1) of the Act,[2] which converted to a notice of compensation payable on March 13, 2016 by operation of law.[3] F.F. No. 1.

On September 22, 2016, Claimant filed a review petition, alleging that his work-related injury resulted in disfigurement and scarring. Employer filed a timely answer denying the material allegations of the petition.[4] F.F. Nos. 2-3.

---

[2] Section 406.1(d)(1) of the Act specifies that:

> In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the [D]epartment [of Labor and Industry].

[3] *See* Section 406.1(d)(5)(i) of the Act, which provides:

> If the employer ceases making payments pursuant to a notice of temporary compensation payable, a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

77 P.S. §717.1(d)(5)(i). *See also* Section 406.1(d)(6) of the Act, which provides:

> If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable.

77 P.S. §717.1(d)(6).

[4] Employer denied that the description of the work-related injury on the notice of compensation payable should be expanded to include a serious and permanent

The WCJ held an evidentiary hearing on December 19, 2016. At the hearing, Claimant testified that he was injured on December 12, 2015 while driving a water truck for Employer. He hit his head when the truck rolled over. Claimant suffered a broken nose and a three-stitch laceration on the right side of his face. A piece of glass punctured the right side of his nose, near his eye. Claimant described his disfigurement as a laceration on the right side of his face, a right curvature of his nose, and slight redness where the glass had been embedded in his nose. He had never broken his nose before December 12, 2015. F.F. No. 7; WCJ's Hr'g, Notes of Testimony (N.T.), 12/19/16, at 8-20.

After personally viewing Claimant's face at the hearing, the WCJ found that the December 12, 2015 work-related injury caused a linear scar on the right side of Claimant's face, approximately 1" to 1 ½" from the corner of his eye. The linear scar runs downward toward his cheek and is approximately 1¼" long, and approximately ⅛" to $^1/_{16}$" wide. The upper part of the linear scar is a darker red than the surrounding skin, while the lower part is "less red and more white than the surrounding skin." The top ¼" to ½" of the scar is visible from a distance of three feet. WCJ's Op., F.F. No. 8.

The WCJ further found that the work-related injury caused an indentation in Claimant's nose, which was visible from a distance of two to three feet and appeared as a slightly shadowy area. The indentation was approximately ¼" to ⅜" in diameter. The WCJ also observed a right curvature in Claimant's nose that began ½" to ¾" from the top of the bridge of Claimant's nose to the end of his nose. WCJ's Op., F.F. No. 8.

---

disfigurement of the face of such a character as to produce an unsightly appearance and that it is not usually incident to the employment. Reproduced Record at 6a.

Based on these findings, the WCJ determined that the December 12, 2015 work-related injury resulted in a serious and permanent disfigurement of Claimant's face, which is of such a character as to produce an unsightly appearance and not usually incident to the employment. F.F. No. 9.

The WCJ concluded that Claimant met his burden of proving all elements of a claim for disfigurement benefits under Section 306(c)(22) of the Act. The WCJ also concluded that the question of valuation of the disfigurement provided Employer with a reasonable contest. WCJ's Op., Conclusion of Law, Nos. 1-2. The WCJ granted Claimant's claim petition and awarded him disfigurement benefits at the weekly rate of $951.00 for a period of forty weeks from December 19, 2016, plus various medical, interest, and other legal costs.[5] WCJ's Op. at 5.

Claimant timely appealed to the Board, asserting that the WCJ did not properly describe his disfigurement. Without providing specifics, Claimant also asserted that the WCJ "capriciously disregarded the evidence in entering an award outside the range most WCJs would select." Respondent's Br. at 2-3. After a hearing on July 11, 2017 the Board viewed the Claimant's face in-person. The Board determined that the WCJ issued an award outside the range[6] normally awarded for similar scars and modified Claimant's award of disfigurement benefits to seventy

---

[5] The order of the WCJ also directed Employer to pay all reasonable and necessary medical expenses causally related to the December 12, 2015 injury; statutory interest on all past-due benefits; Claimant's litigation costs of $142.05; and 20% fee from the indemnity benefits as counsel fees. *See* Section 440(a) of the Act, 77 P.S. §996(a) (in any contested case where an insurer contests liability, a WCJ shall award counsel fees unless the employer provides a reasonable basis for the contest). Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended.*

[6] The Board stated that typical range of benefits for similar scars is sixty to eighty weeks.

4

weeks of compensation and affirmed the WCJ's decision in all other respects. Employer timely appealed.[7]

## II. Issues

Employer argues that the Board erred and abused its discretion in modifying the WCJ's disfigurement award since the Board failed to provide any evidence that proved that the WCJ's award was significantly outside the range normally awarded for disfigurements.

## III. Discussion

Section 306(c)(22) of the Act states:

> For a disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> ….
>
> (22) For serious and permanent disfigurement of the head, neck or face, of such a character as to produce an unsightly appearance, and such is not usually incident to the employment, sixty-six and two-thirds per centum of wages not to exceed two hundred seventy-five weeks.

77 P.S. §513(22).

Section 306(c)(22) of the Act, by necessity, allows wide latitude in assessing awards for disfigurement, as these types of determinations are extraordinarily fact oriented and must be made on a case by case basis, taking into account, among other factors, the nature and severity of the disfigurement. In the seminal Pennsylvania Supreme Court case involving workers' compensation disfigurement awards,

---

[7] Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 155 A.3d 140, 147 n.12 (Pa. Cmwlth.), *appeal denied*, 169 A.3d 1081 (Pa. 2017).

*Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt),* 611 A.2d 1187, 1190 (Pa. 1992), the Court characterized the amount of a disfigurement award as "… a mixed question of fact and law" subject to the Board's review. *Id.*

While the Act itself provides limited guidance on how to calculate disfigurement awards, the following cases offer some guidelines.

First and foremost, courts have held that the most meaningful evidence involves the fact-finder's in-person observation of the disfigurement itself. In *Hastings*, the Supreme Court explained why it is critical to observe a claimant's disfigurement first-hand:

> [I]t is the physical appearance of the claimant himself and the unsightliness of the disfigurement which constitutes the evidence considered by the [WCJ]. It is impossible to preserve this evidence with total accuracy in the record. Even if photographs, proverbially worth thousands of words, are included in the record, their accuracy depends on lighting, camera quality, skill of the photographer, and other factors which affect the truth they convey.

*Id.* at 1190.

After the fact-finder observes the claimant, in order to qualify for a disfigurement award, the fact-finder must determine that the disfigurement created an "unsightly appearance." *Walker v. Workers' Comp. Appeal Bd. (Health Consultants)*, 42 A.3d 1231 (Pa. Cmwlth. 2012).

Thus, in assessing awards for disfigurement, the WCJ has the first opportunity to personally view the disfigurement to determine its seriousness and unsightliness. *McCole v. Workers' Comp. Appeal Bd. (Barry Bashore, Inc.)*, 745 A.2d 72, 76-77 (Pa. Cmwlth. 2000). If there is an appeal, the Board is then obligated to personally view the Claimant because that is the "only meaningful way for the [Board] to

6

determine whether the WCJ's opinion is supported by substantial competent evidence." *Id*. at 77 (internal quotation omitted).

However, the fact that the Board accepts a WCJ's description of a claimant's disfigurement does not preclude the Board from making an award different from that of the WCJ. *Hastings*, 611 A.2d at 1190. If the Board, upon viewing claimant's disfigurement, concludes that the WCJ entered an award significantly outside the range most WCJs would select, the Board may modify the award as it deems appropriate. *Id.* The public policy goal is to establish uniform awards for similar types of disfigurements.

In the instant matter, the WCJ visually assessed the Claimant, described the disfigurement in great detail, and issued a disfigurement benefits award at the weekly rate of $951.00 for a period of forty weeks. Claimant appealed arguing that the award was outside the range most WCJs would select.

The Board then personally viewed Claimant at the July 11, 2017 hearing. Using slightly different language, the Board essentially adopted the WCJ's description of Claimant's disfigurement. The Board indicated that the nose appeared "crooked", Board Op., 7/11/17, at 3, while the WCJ described a ¼" to ⅜" indentation on Claimant's nose visible from up to three feet and a right curvature in Claimant's nose that began ½" to ¾" from the top of the bridge of Claimant's nose to the end of his nose. Both indicated that the scar appeared red. Board Op., 7/11/17, at 4-5. The WCJ indicated that this scar was visible from a distance of three feet while the Board observed this scar could be seen from a close distance. Despite an essentially similar description of the disfigurement the Board increased the award from forty weeks to seventy weeks.

7

Employer next argues that the Board "failed to demonstrate that the [WCJ] capriciously disregarded evidence by entering an award significantly outside the range most [WCJs] would select and because it failed to provide any reviewable basis for its determination of the acceptable range of benefits for the disfigurement." Petitioner's Br. at 2. We agree.

The key issue in the instant appeal is that the record is devoid of any evidence regarding precisely what information the Board relied upon in concluding that the WCJ's award was significantly outside the range normally awarded for scars similar to Claimant's scar.

A review of prior decisions by both the Supreme and Commonwealth Courts addressing this same issue reveals a persistent troubling pattern and lack of transparency by the Board in the process of determining disfigurement awards.

In *Hastings*, the claimant suffered work-related facial scarring for which a referee[8] awarded seventeen weeks of compensation. On appeal, the Board viewed the scar and determined that the referee's description of the scar was accurate, but found that the award of seventeen weeks compensation constituted "*a capricious disregard of competent evidence.*" *Hastings*, 611 A.2d at 1188. As a result, the Board amended the award to provide for fifty weeks of compensation, stating the

_____

[8] Prior to amendments in the Act, WCJs were referred to as referees. Section 413 of the Act, 77 P.S. §772, states in pertinent part that:

> A worker's compensation judge ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award ... upon petition by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status on any dependent has changed....

The 1996 amendment to this section of the Act substituted "workers' compensation judge" for "referee" but did not otherwise substantially alter it.

increase was necessary to achieve uniformity among WCJs in the state. In upholding the Board's determination, the Supreme Court found that:

> …applicable to loss of use cases; if the [Board] concludes, upon a viewing of a claimant's disfigurement, that the referee capriciously disregarded competent evidence by entering an award significantly outside the range most referees would select, the [Board] may modify the award as justice may require.

*Id.* at 1190-91.

In this regard, the Supreme Court essentially holds that in order for a WCJ to properly assess an award for a disfigurement claim, the WCJ must analyze awards for similar disfigurements issued by WCJs around the state. The Supreme Court further states that the failure to do so constitutes a *capricious disregard of competent evidence* by the WCJ. *Id*. at 1190.

While the Commonwealth Court adheres to the *Hastings* legal analysis, we have also, over the years, repeatedly attempted to require the Board to provide transparency and guidelines for how it determines what constitutes a "normal range" for a particular disfigurement.

In *City of Pittsburgh v. Workers' Compensation Appeal Board (McFarren),* 950 A.2d 358 (Pa. Cmwlth. 2008), after an appeal from a WCJ's disfigurement award, the Board viewed the claimant's scar and accepted the WCJ's description of the scar. *Id*. at 360. The Board determined that *most* WCJs awards would be between thirty to forty weeks of compensation for the scar and concluded that the WCJ erred in entering an award below that range and increased the award from six weeks to thirty-five weeks. *Id*. at 361. On appeal, this Court determined that the Board failed to adequately explain its decision to modify the WCJ's award. We stated:

9

After reviewing the record, the Court cannot conclude that the Board adequately explained its modification of the disfigurement award.  The Board viewed [the claimant's] scar and accepted the WCJ's description of the scar . . . .  Although the Board accepted this characterization of the scar . . . *it nonetheless increased the award from six weeks to thirty-five weeks with no explanation other than that the proper range for the scar is thirty to forty weeks of compensation benefits.*  In furtherance of the goal of promoting statewide uniformity, the Board must explain *how* it determined that WCJs would select thirty to forty weeks of benefits for a surgical scar of one inch in visible length that was slight in its severity.  The Board failed to do so here . . . .While the Board may not be bound by a local rule of thumb, the Board should provide an explanation for its decision to increase the disfigurement award to allow the Court to determine whether the Board's decision is compatible with the goal as announced in *Hastings*.

*Id.* at 361 (emphasis added).

Similarly, in *Dart Container Corporation v. Workers' Compensation Appeal Board (Lien)*, 959 A.2d 985 (Pa. Cmwlth. 2008) (*Dart Container I*), this Court, relying on *City of Pittsburgh,* remanded the matter to the Board, stating:

In the case *sub judice,* the Board considered the visual impact of [claimant's] disfigurement, its location and relative severity of her scarring and explained that based upon its experience the range that most WCJs would select for a similar scar is between 60 to 75 weeks. However, the Board did not describe [claimant's] scar, did not state whether it rejected the WCJ's description and did not explain *why* most WCJs would award within the 60 to 75 weeks' range.  Therefore, a remand is in order, but as noted in *City of Pittsburgh* upon adequate explanation the Board may indeed reach the same result.

*Id.* at 989 (emphasis added).

On remand, the Board reached the same result, stating:

…We accept the WCJ's description of [c]laimant's scar, as agreed to by the parties.  We further respectfully note by way of explanation, *that a WCJ, who acts alone in making an award based on an assessment of the claimant's scar, does not have the benefit of being able to consult*

10

*with other WCJs statewide to determine an appropriate award. Rather, he is limited to his subjective evaluation of the disfigurement.* This Board, on the other hand, is comprised of multiple Commissioners who have the benefit and experience of viewing scars and awards in appeals from WCJ decisions statewide. *It is based on our years of experience in reviewing such matters on a statewide basis*, that we must again conclude that most WCJs throughout the Commonwealth of Pennsylvania would award between 60 and 75 weeks of compensation for [c]laimant's scar based on its location, color, contour, depth, length, and visibility. We therefore modify the WCJ's award to reflect a disfigurement award of 70 weeks.[**9**]

*Dart Container Corp. v. Workers' Comp. Appeal Bd. (Lien)* (Pa. Cmwlth., No.1323 C.D. 2009, filed January 29, 2010) (unreported) (*Dart Container II*).

In the instant matter, Employer relies on *City of Philadelphia v. Workers' Compensation Appeal Board (Doherty)*, 716 A.2d 704, 707 (Pa. Cmwlth. 1998), and *Lord & Taylor v. Workers' Compensation Appeal Board (Bufford)*, 833 A.2d 1223 (Pa. Cmwlth. 2003) in support of its argument that the Board did not offer sufficient evidence or explanation as to how or why it determined the acceptable range of disfigurement benefits for Claimant's scar.

In *City of Philadelphia,* the Board increased the Claimant's disfigurement award from fifteen to seventy-five weeks on the sole basis "that the WCJ's award is below the range for which most WCJ's [sic] would award compensation." *Id.,* at

---

[**9**] The employer in *Dart Container I* appealed the Board's remand decision to this Court. On appeal in *Dart Container Corporation v. Workers' Compensation Appeal Board (Lien)* (Pa. Cmwlth., No. 1323 C.D. 2009, filed January 29, 2010) (unreported) (*Dart Container II)* this Court found the Board's essentially non-responsive explanation adequate. However, we should note that as *Dart Container II* is an unpublished opinion, it has persuasive, not precedential, value. Furthermore, the Court's reasoning in *Dart Container II* represents a deviation from the analysis of the other published and precedential Commonwealth Court cases cited herein, that found as inadequate, virtually the same explanations for modified disfigurement awards as stated by the Board in *Dart II*.

707 (internal citation omitted). The employer appealed the Board's modified award arguing that the Board's vague explanation failed to justify or explain its decision to increase the WCJ's award. This Court agreed, vacated the modified award, and remanded the matter on this issue, noting that an adequate explanation required the Board to indicate "what range is acceptable under [the] circumstances, what most WCJs would award within that range or how the Board reached its conclusion that most WCJs would award greater compensation." *Id.,* at 707 (emphasis added).[10]

In *Lord & Taylor*, the Board increased the WCJ's disfigurement award from thirty to one hundred weeks. Again, the sole basis for the Board's modification was that the WCJ's award was outside of the range that most WCJs would select. The employer appealed the Board's modified award to this Court arguing that the Board's vague explanation failed to justify or explain its decision to increase the WCJ's award. Once again, this Court agreed with the employer, vacated the modified award, and remanded the matter to the Board emphasizing that the Board should explain *how* it arrived at its determination of the range of awards that most judges would select in a given case.[11]

*Hastings* and its progeny underscores a persistent and troubling pattern in how workers' compensation disfigurement awards are awarded.

First, as stated by both Supreme and Commonwealth Courts, WCJs apparently exhibit a "capricious disregard of competent evidence" by failing to consider other

---

[10] This Court affirmed that portion of the Board's order pertaining to calculation of Claimant's average weekly wage. However, after this Court remanded the matter for further findings of fact on the disfigurement award, there were no further appeals, so we cannot state what the Board determined on remand.

[11] Similar to the *City of Philadelphia* case noted above, after this Court in *Lord & Taylor* remanded the matter, there were no further appeals, so we cannot state what the Board determined on remand.

12

awards for similar disfigurements.  This appears to mandate an *affirmative obligation* on the part of all Pennsylvania WCJs to do an analysis of awards for similar disfigurements from throughout Pennsylvania to assess an award that fits within those standards.  However, at the same time, the Board and this Court have clearly recognized that State Board Commissioners *alone* have access to this information, whereas the WCJs do not.

If WCJs are required to consider comparable awards for similar disfigurements, then by reason, the WCJs should be provided with the necessary resources to easily access this information.  If a WCJ does not have readily available access to this information, it seems improper to characterize a WCJ's decision making standards as a "capricious disregard of competent evidence".

Second, in the instant matter, and in each of the cases cited herein, the Board repeatedly failed to provide sufficient explanations as to how it arrived at disfigurement awards, except to make bald assertions that the Board has "experience" in these matters.  The Board fails to establish that objective, rational, and demonstrable standards to assess disfigurement awards are being utilized by the Board, what data/information the Board is relying upon, or how and where is this information maintained. The Board offers no guidance on precisely how *many* "similar" disfigurement awards the Board reviewed, or the precise descriptions of the other facial scars that the Board took into account. As these prior awards have apparently established the "standard" range, a clear explanation of what information the Board is relying upon is essential. This lack of explanation and information raises the concern that the Board is simply substituting its judgment for that of the WCJ. As stated earlier, Section 306(c)(22) of the Act, by necessity, allows wide latitude in assessing awards for disfigurement, as these types of determinations are

13

*extraordinarily* fact oriented and must be made on a case by case basis, taking into account, among other factors, the nature and severity of the disfigurement.

Thus, so-called "standards" for disfigurement awards have apparently been established without any transparent explanation or information, despite repeated efforts by this Court to rectify this deficiency.

While this Court fully appreciates the equitable considerations in encouraging uniformity in awards for similar disfigurements, the standards have yet to be objectively demonstrated.

For the reasons set forth above, this Court finds that the Board failed to cite to substantial and competent evidence, that the WCJ's award was significantly outside the range normally awarded for disfigurements similar to Claimant's and that the Board failed to adequately explain its basis for modifying the WCJ's award. As such we cannot conduct meaningful appellate review.

Accordingly, we vacate the order of the Board and remand to the Board for further explication and analysis of its decision to modify the WCJ's award of disfigurement benefits, consistent with this Opinion.

ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keister Miller Investments LLC,    :
                  Petitioner    :
                               :
           v.                 :   No. 1303 C.D. 2017
                               :
Workers' Compensation         :
Appeal Board (Hoch),          :
                  Respondent   :

# O R D E R

AND NOW, this 23rd day of March, 2018, the order of the Workers' Compensation Appeal Board, dated August 30, 2017, is hereby VACATED and this matter is REMANDED for further explication and analysis consistent with this Opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge