# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Koch,                :
               Petitioner     :
                           :
           v.                 :    No. 513 C.D. 2018
                           :
Workers' Compensation Appeal    :
Board (Volvo Group North America,    :
Inc.),                            :
           Respondent   :
                           :
Volvo Group North America, Inc.,    :
           Petitioner     :
           v.                 :    No. 582 C.D. 2018
                           :    Submitted:  January 4, 2019
Workers' Compensation Appeal    :
Board (Koch),                  :
           Respondent   :

**BEFORE:**   **HONORABLE P. KEVIN BROBSON, Judge**
                  **HONORABLE ANNE E. COVEY, Judge**
                  **HONORABLE CHRISTINE FIZZANO CANNON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  June 12, 2019**

In these consolidated matters, Claimant Christopher Koch (Claimant) and Employer Volvo Group North America, Inc. (Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board), dated March 15, 2018.  The Board reversed the portion of the decision of a Workers' Compensation Judge (WCJ) that assessed attorneys' fees against Employer for

unreasonable contest and affirmed the WCJ's decision granting Claimant's Claim Petition in all other respects. For the reasons set forth below, we affirm the Board's order.

Claimant works for Employer in its materials department, operating equipment, including forklifts. On September 28, 2015, Claimant sustained a work-related injury to his right hip/groin area. Employer provisionally accepted liability for a work-related right hip strain pursuant to a medical-only Notice of Temporary Compensation Payable. (Reproduced Record (R.R.) at 9a-10a.) On November 5, 2015, however, Employer issued a Notice Stopping Temporary Compensation (NSTC) and a Notice of Workers' Compensation Denial (NCD). (*Id.* at 12a-13a.) On the NCD, Employer indicated that it was not accepting liability for Claimant's hip/groin strain because Claimant "did not suffer a work-related injury" and Claimant's injury did not occur "within the scope of [his] employment." (*Id.* at 12a.) Thereafter, on January 13, 2016, Claimant filed a Claim Petition, alleging that he sustained a right inguinal hernia while working for Employer on September 28, 2015. (*Id.* at 15a-16a.) In his Claim Petition, Claimant sought: (1) acknowledgement of his September 28, 2015 work-related injury; (2) the payment of medical bills in connection with his September 28, 2015 work-related injury; and (3) the payment of anticipated disability benefits when Claimant is off from work following surgery to repair his work-related right inguinal hernia. (*Id.* at 15a-16a, 34a-35a.) Employer filed an answer to the Claim Petition, denying, *inter alia*, that Claimant sustained a right inguinal hernia and/or that Claimant's right inguinal hernia was work-related. (*Id.* at 21a-23a.)

Before the WCJ, Claimant testified that, in September 2015, Employer moved him to a new department, where he performed different tasks, worked with

different parts, and operated an electric, sit-down forklift rather than a gas-operated forklift. (*Id.* at 37a, 44a.) On September 28, 2015, two days after moving to the new department, Claimant was climbing down from a forklift, when he either missed the step located two feet from the floor or over-extended his leg getting down from the step, causing him to experience an immediate, sharp pain in his right groin. (*Id.* at 37a-38a, 44a-45a, 49a.) The next day, Claimant reported to Employer's infirmary, where a nurse treated him. (*Id.* at 39a.) The nurse gave him an ice pack and ibuprofen and placed him on light duty. (*Id.*) Claimant returned to Employer's infirmary the following day, and Employer's company doctor, Alan Muto, D.O., treated him. (*Id.*) Dr. Muto gave Claimant an ice pack and ibuprofen, restricted Claimant to light-duty office work, and referred Claimant to Scott Beman, M.D. (*Id.* at 39a-40a.)

Claimant testified further that, after Employer issued the NCD, he began treating with Robert Bloch, M.D., on referral from his attorney. (*Id.* at 40a-41a, 44a, 48a.) Based on the results of an ultrasound, Dr. Bloch recommended that Claimant undergo surgery. (*Id.* at 41a.) Claimant stated that he intends to proceed with the surgery, but he is waiting for a decision from the WCJ before doing so. (*Id.* at 41a, 47a.) Claimant explained that he continues to experience intermittent pain in his right groin area with even simple activities, like getting up from a chair. (*Id.* at 41a-42a.) Claimant explained further that he had never injured his right groin or had problems performing his job duties due to his right groin prior to September 28, 2015. (*Id.* at 42a.) Claimant also had never treated with a general surgeon for any type of hernia or inguinal groin issues prior to September 28, 2015. (*Id.* at 46a.) Claimant testified that he continues to work for

3

Employer in his regular, full-duty position with a squatting restriction. (*Id.* at 49a-51a.)

Claimant also presented the deposition testimony of Dr. Bloch, who is board certified in general surgery. (*Id.* at 80a.) Dr. Bloch treated Claimant on January 5, 2016, upon referral from Claimant's attorney for complaints of right groin pain. (*Id.* at 83a-84a.) Dr. Bloch testified that he reviewed Claimant's medical records relative to the treatment that he received for the September 28, 2015 work-related injury, which revealed that Dr. Muto had treated Claimant with cold compresses and ibuprofen for hip discomfort or a groin strain and had eventually referred Claimant to a surgeon for evaluation of a possible hernia. (*Id.* at 84a-85a.) Dr. Bloch explained that, on physical examination, he "could not feel a hernia with certainty," but that Claimant had a cough impulse—*i.e.*, an increase in abdominal pressure upon cough—on the right side of his groin and tenderness high up in the inguinal canal. (*Id.* at 85a-86a.) Based on his review of Claimant's medical records, the history provided to him by Claimant, and the results of his physical examination, Dr. Bloch believed that "the diagnosis of a groin strain was probably incorrect because it had been there just too long." (*Id.* at 86a.) Because, however, Dr. Bloch could not definitively feel a hernia upon examination, he ordered an ultrasound to determine whether a hernia was present. (*Id.*)

Dr. Bloch testified further that Claimant underwent the ultrasound on January 12, 2016, which revealed that there was "a peristaltic heterogenous area in the right groin suggestive of an inguinal hernia." (*Id.* at 88a-89a.) Ultimately, Dr. Bloch opined within a reasonable degree of medical certainty that Claimant had sustained a right inguinal hernia as a result of an accident at work on September 28, 2015. (*Id.* at 90a-91a, 94a.) Dr. Bloch indicated, however, that there

4

was a caveat—"the hernia[,] or at least the propensity for the hernia[,] could have been there before, yet it was exacerbated at the time of the injury." (*Id.* at 91a.) Dr. Bloch explained:

> [A]n inguinal hernia is a defect in the abdominal wall where an inner lining goes through the muscle layers. There is a hole in the muscles which is supposed to close off around the spermatic cord. In humans we are prone to hernias because we're bipedal, we stand up and we pick up things and we cough and we age. And that closed area around the spermatic cord can open and, hence, have a propensity for a hernia. That doesn't mean that the peritoneum and the bowel, which was seen on ultrasound, is going to go down and get stuck there. It just means the propensity is there.
>
> At the time of the injury he had an acute pain in the correct place with the correct physical findings. I have to think since he was asymptomatic before then, that this injury was either causative or it is causative.

(*Id.* at 91a-92a.) When asked whether the mechanism of injury described by Claimant was sufficient to cause the right inguinal hernia, Dr. Bloch stated:

> It's possible. Anything that would increase either the stretch in the area or the amount of pressure can do it. In other words, it's easier to see if someone is picking up [fifty] pounds because they're straining. On the other hand, they're also straining if they miss a step and hyperextend their leg.

(*Id.* at 92a-93a.) In order to treat Claimant's right inguinal hernia, Dr. Bloch recommended that Claimant undergo surgery. (*Id.* at 90a.) Dr. Bloch further opined within a reasonable degree of medical certainty that the hernia repair surgery was caused or necessitated by the hernia and the hernia was caused by the September 28, 2015 work-related injury described by Claimant, "especially since [Claimant] was never symptomatic before and he has been symptomatic ever since." (*Id.* at 93a-94a.)

5

Dr. Bloch admitted that Claimant, who is a large gentleman,[1] had undergone a seventy-five pound weight loss by the time of his examination on January 5, 2016, and that, as a result of the weight loss, it was obviously easier for him to examine Claimant and discover the hernia. (*Id.* at 85a, 96a-97a.) Dr. Bloch also admitted that he, Dr. Muto, and Dr. Beman were all unable to feel a hernia upon examination of Claimant's right groin area. (*Id.* at 97a-100a.) Dr. Bloch explained, however, that:

> [Claimant] is a big guy. And you have to go way up the inguinal canal, and there's a lot of padding in this gentleman. When I can definitively diagnosis a hernia, I feel a protrusion which is bowel with peritoneum on top of it, and I can push it in. That's a hernia without question. I could not feel that in this patient, but the radiologist was able to see it and that's why I came up with this diagnosis.

(*Id.* at 103a-04a.) When questioned about whether he gave his testimony within a reasonable degree of medical certainty, the following exchange occurred between Dr. Bloch and Employer's counsel:

> Q. Doctor, you testified as to a reasonable degree of medical certainty; and if I understand your testimony, to you that means that it's more likely than not that this alleged work injury that Claimant had is either the exacerbation of the underlying condition or causing the underlying condition, am I right?
>
> A. Correct.

(*Id.* at 101a-02a.)

In opposition to Claimant's claim petition, Employer presented the deposition testimony of Arnold Baskies, M.D., who is board certified in general surgery. (*Id.* at 146a.) Dr. Baskies performed an independent medical examination

---

[1] At the time of the February 8, 2016 hearing, Claimant reported that he was six-feet tall and weighed two hundred and ninety pounds. (R.R. at 43a-44a.)

6

of Claimant on March 9, 2016, which included obtaining a history, reviewing Claimant's medical records, and performing a physical examination. (*Id.* at 146a-48a.) Dr. Baskies' physical examination of Claimant revealed the presence of a reducible inguinal hernia in the right groin area. (*Id.* at 147a.) When questioned whether the September 28, 2015 work-related incident had caused Claimant to sustain the right inguinal hernia, however, Dr. Baskies opined:

> I find no evidence in the records whatsoever that he had sustained a hernia on September 28, 2015. In fact, the medical records contradict the theory of Dr. Bloch.
>
> . . . .
>
> Well, the documentation in the records is fairly clear that there was no hernia that formed as a result of a right groin strain that was documented in the medical records.
>
> So that I'm clear in what I'm saying, and so that the [WCJ] understands fully, there is no doubt that the medical records show that he sustained a groin strain, but it was a self-limiting injury. There's no documentation that shows that he was, quote, unquote, predisposed to develop a right inguinal hernia. People strain their groins all the time and don't develop a right inguinal hernia.
>
> So in my experience and based on my knowledge of the disease process, there's no reason to believe that the groin strain was the mechanism for his developing a right inguinal hernia. There's no documentation that supports that.

(*Id.* at 148a-49a.) Dr. Baskies explained that, while Claimant presented to him with a right inguinal hernia, the medical records simply do not establish that Claimant's hernia was caused by the September 28, 2015 work-related incident. (*Id.* at 154a.) Dr. Baskies further explained that both Dr. Beman and Dr. Muto examined Claimant following the September 28, 2015 work-related incident and that neither doctor discovered a hernia upon physical examination. (*Id.* at 151a-52a, 155a.) Dr. Baskies

7

indicated that, if Claimant had sustained an acute tear of the abdominal wall on September 28, 2015, he would have expected that a doctor would have discovered the hernia in the acute aftermath of the incident, which did not occur in this case. (*Id.* at 155a-56a.) Dr. Baskies further opined that, based on Claimant's medical records—*i.e.*, Dr. Muto's and Dr. Beman's diagnoses of a right groin strain—and Claimant's history, Claimant had developed a right hip/groin strain as a result of the September 28, 2015 work-related incident, but Claimant had fully recovered from such injury as of March 9, 2016, the date of his independent medical examination. (*Id.* at 148a-51a, 157a.)

In rebuttal, Claimant offered Dr. Bloch's June 2, 2016 supplemental report. In his report, Dr. Bloch disagreed with Dr. Baskies' conclusions and opinions and reiterated his opinion that Claimant sustained a right inguinal hernia as a result of the September 28, 2015 work-related incident. (*Id.* at 141a-42a.) Dr. Bloch explained that Claimant is a large man with a small hernia and, therefore, diagnosis on physical examination is not one hundred percent. (*Id.* at 141a.) Dr. Bloch further explained that Claimant was experiencing pain for too long of a period of time for Claimant to be suffering solely from a groin strain. (*Id.*)

On January 31, 2017, the WCJ issued a decision and order, granting Claimant's Claim Petition and assessing attorneys' fees against Employer for unreasonable contest. In so doing, the WCJ summarized the relevant credible evidence and made the following credibility determinations:

> Claimant's live testimony is credible.
>
> This [WCJ] finds the deposition testimony of Dr. Bloch credible and Dr. Baskies' deposition testimony not credible. The crux of the doctors' difference of opinion seems to center on whether one's weight and girth can impede palpation of a hernia. Neither doctor disagrees that Claimant presented to them on the initial visits with a

8

hernia. Dr. Baskies appears adamant that since previous doctors did not palpate the hernia, it did not exist between [September 28, 2015] and, at least, [January 6, 2016]. He offers no explanation why Claimant's pain and discomfort persisted during that time. He did not review the January 2016 ultrasound despite his opinion that an unrepaired hernia may continue to grow over the approximate two months between the ultrasound and his examination.

(WCJ's Decision at 4.) Based on the evidence and these credibility determinations, the WCJ concluded that Claimant met his burden of proving that he sustained a right inguinal hernia on September 28, 2015, while working for Employer. The WCJ also concluded that "[t]here is no evidence of a reason why [Employer] chose to assert the alleged groin strain [was] not work-related[,]" and, therefore, Employer did not have a reasonable basis to contest Claimant's claim petition. (WCJ's Decision at 6-7.)

Employer appealed to the Board, which reversed the portion of the WCJ's decision that assessed attorneys' fees against Employer for unreasonable contest and affirmed the WCJ's decision in all other respects. With respect to unreasonable contest, the Board reasoned:

The WCJ did not make a finding specifically explaining why he believed [Employer's] contest was unreasonable, but he pointed out that there is no evidence of a reason why [Employer] chose to issue [an NCD] asserting that Claimant did not sustain a work injury when its medical experts acknowledged at least a work-related hip/groin strain, and the only evidence [Employer] presented was Dr. Baskies' rejected testimony.

Like the WCJ, we observe that [Employer] now seems to agree there was a work-related hip/groin strain and offers no explanation for why it issued a [NSTC] and [an NCD] stating that no injury occurred. However, [Employer's] conduct regarding a hip/groin strain does not make its contest unreasonable, because this litigation was not about a hip/groin strain. A hip/groin strain is not why

9

Claimant hired a lawyer and filed a Claim Petition. Rather, this litigation was about a hernia. Claimant did not miss time from work but wanted acknowledgement of a work-related hernia and disability if he goes out for surgery. Although Dr. Bloch and Dr. Baskies both diagnosed Claimant with an inguinal hernia, there was a genuinely disputed issue as to whether Claimant sustained the inguinal hernia at work. [Employer] presented unequivocal medical testimony from Dr. Baskies that he did not. [Employer] also provided extensive explanation from Dr. Baskies why he held that opinion, including the fact that neither Dr. Muto nor Dr. Beman were able to clinically palpate a hernia near the time of the incident. Although the WCJ did not credit [Employer's] medical evidence, it was nevertheless competent evidence which, if found credible by the WCJ, could have supported a denial of the Claim Petition for an inguinal hernia.

(Board's Decision at 11-12 (footnote omitted).) Claimant and Employer then petitioned this Court for review.

On appeal,[2] Employer argues that the Board committed an error of law by affirming the WCJ's conclusion that Claimant sustained a right inguinal hernia while working for Employer on September 28, 2015, because Dr. Bloch's testimony was equivocal.[3] In his cross-petition for review, Claimant argues that the Board committed an error of law by reversing the WCJ's award of attorneys' fees for

---

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

[3] Although this Court previously designated Claimant as petitioner pursuant to Pennsylvania Rule of Appellate Procedure 2136, we will consider Employer's issue first, because, in order to be entitled to an award of attorneys' fees for unreasonable contest, Claimant must have prevailed on his Claim Petition. *See* Section 440(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a).

unreasonable contest because Employer did not offer any evidence to justify its issuance of the NSTC and the NCD.

First, we will address Employer's argument that the Board committed an error of law by affirming the WCJ's conclusion that Claimant sustained a work-related right inguinal hernia while working for Employer on September 28, 2015, because Dr. Bloch's testimony was equivocal. More specifically, Employer argues that Dr. Bloch's testimony was "predicated on mere possibilities," because Dr. Bloch admitted that the mechanism of Claimant's injury could have "possibly" caused Claimant's right inguinal hernia. Employer further argues that Dr. Bloch's testimony did not meet the required "within a reasonable degree of medical certainty" standard because Dr. Bloch believed that within a reasonable degree of medical certainty meant "more likely than not," and this concept was previously rejected by this Court in *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336 (Pa. Cmwlth. 2010). In response, Claimant argues that the Board properly affirmed the WCJ's conclusion that Claimant sustained a work-related right inguinal hernia while working for Employer on September 28, 2015, because Dr. Bloch credibly and unequivocally testified that Claimant's September 28, 2015 work-related injury caused him to sustain a right inguinal hernia.

In a claim petition proceeding, the claimant bears the burden of proving all elements necessary for an award. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Pursuant to Section 301(c)(1) of the Act,[4] an employee's injuries are compensable if they "(1) arise[] in the course of employment and (2) [are] causally related thereto." *ICT Group v. Workers' Comp.*

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

11

*Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 930 (Pa. Cmwlth. 2010). Further, an employee must demonstrate that he is disabled as a consequence of the work-related injury. *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Id.* "The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). "In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context." *Id.* "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). "[M]edical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011).

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). It is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether

12

substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Comp. Appeal Bd.* (*Senco Prods., Inc.*), 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Here, Employer is essentially asking this Court to take just a few words from Dr. Bloch's testimony out of context and not consider Dr. Bloch's testimony as a whole, which we will not do. *See Amandeo*, 37 A.3d at 80. The Board concluded that Dr. Bloch's opinion regarding the cause of Claimant's right inguinal hernia was unequivocal. The Board explained that, while Dr. Bloch indicated that "it's possible" that Claimant's mechanism of injury was sufficient to cause the right inguinal hernia, Dr. Bloch thereafter opined that the right inguinal hernia was caused by the September 28, 2015 work-related incident based on several factors, including that Claimant had no prior symptoms, that Claimant experienced an acute pain at the time of the work-related incident, and that Claimant has been symptomatic since the time of the work-related incident. The Board explained further that Dr. Bloch also testified that the right inguinal hernia could not be palpated on physical examination due to Claimant's size but that the hernia could be seen on the ultrasound. The Board also recognized that Dr. Bloch reiterated his opinion on causation in his June 2, 2016 supplemental report. With respect to the applicability of this Court's decision in *Kollar* to the facts of this case, the Board reasoned:

> *Kollar* is distinguishable. It deals with a different legal scenario[—*i.e.*, whether an individual's refusal to submit to chemical testing was knowing and conscious such that her operating privileges could be suspended—] and the doctor's testimony as a whole in that case was not sufficiently sure about causation. Here, when asked by [Employer's] counsel whether testifying to a reasonable degree of medical certainty means it is more likely than not that Claimant's condition is work-related, Dr. Bloch responded in the affirmative. Counsel introduced the concept of more likely than not and Dr. Bloch simply agreed with it. Unlike the medical expert in *Kollar*,

13

> Dr. Bloch's testimony as a whole was unequivocal, expressing his opinion that Claimant's right inguinal hernia was causally related to the incident where he stepped off the forklift on September 28, 2015, and not testifying that there might be some other cause. His opinion was not based on mere possibilities.

(Board's Decision at 9-10.) We agree with the Board's analysis, as well as the Board's conclusion that Dr. Bloch's testimony regarding the cause of Claimant's right inguinal hernia was unequivocal. Dr. Bloch's unequivocal testimony and Claimant's testimony, both of which the WCJ found credible, constitute substantial evidence to support the WCJ's conclusion that Claimant sustained a work-related right inguinal hernia while working for Employer on September 28, 2015. As a result, we cannot conclude that the Board committed an error of law by affirming the portion of the WCJ's decision that granted Claimant's Claim Petition.

Next, we will address Claimant's argument that the Board committed an error of law by reversing the WCJ's award of attorneys' fees for unreasonable contest because Employer did not offer any evidence to justify its issuance of the NSTC and the NCD. More specifically, Claimant argues that, at the time that Employer issued the NSTC and the NCD, Employer did not possess any medical evidence that Claimant had not sustained a work-related injury on September 28, 2015. Claimant further argues that, while there may have been a reasonable basis to contest whether Claimant sustained a work-related right inguinal hernia, Employer did not have any reasonable basis to deny the existence of a work-related injury. Claimant contends that "there was never any dispute as to whether Claimant sustained [a] right hip/groin strain," because, not only does all of the medical evidence of record support a conclusion that Claimant sustained a work-related injury on September 28, 2015, but Employer has also admitted that Claimant sustained a work-related right hip/groin strain. (Claimant's Br. at 8-10.)

14

In response, Employer argues that the Board properly reversed the WCJ's award of attorneys' fees for unreasonable contest because: (1) the WCJ failed to make a specific finding as to why Employer's contest was unreasonable; and (2) "[t]he record is clear that [Employer] established a reasonable basis for its contest to [Claimant's] claim that he sustained a right inguinal hernia," because Dr. Muto, Dr. Beman, and Dr. Baskies all opined that Claimant did not sustain a work-related right inguinal hernia. (Employer's Br. at 18-19.)

Under Section 440(a) of the Act, a successful claimant shall be awarded attorneys' fees unless the employer proves that it had a reasonable basis for the contest. "Whether an [e]mployer's contest of liability is reasonable is a question of law reviewable by this Court." *Capper v. Workers' Comp. Appeal Bd. (ABF Freight Sys., Inc.)*, 826 A.2d 46, 50-51 (Pa. Cmwlth. 2003). Whether an employer had a reasonable basis for contesting a claimant's award of benefits depends upon both the facts and the legal issues involved in each case. *Poli v. Workmen's Comp. Appeal Bd.*, 384 A.2d 596, 598 (Pa. Cmwlth. 1978). "'[T]he reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant.'" *Capper*, 826 A.2d at 51 (quoting *Elite Carpentry Contractors v. Workmen's Comp. Appeal Bd. (Dempsey)*, 636 A.2d 250, 252 (Pa. Cmwlth. 1993)). The employer bears the burden of proving the reasonableness of its contest but, in doing so, need not prove that its evidence is legally sufficient in order to establish reasonableness. *Id.* Instead, "[a] reasonable contest is established where the evidence is conflicting or subject to contrary inferences." *Lemansky v. Workers' Comp. Appeal Bd. (Hagan Ice Cream Co.)*, 738 A.2d 498, 501 (Pa. Cmwlth. 1999), *appeal denied*, 759 A.2d 389 (Pa. 2000). A violation of the Act by an employer does not automatically render the employer's

15

conduct unreasonable. *Bates v. Workers' Comp. Appeal Bd. (Titan Constr. Staffing, LLC)*, 878 A.2d 160, 164 (Pa. Cmwlth. 2005), *appeal denied*, 902 A.2d 1243 (Pa. 2006). In determining the reasonableness of a contest, the appellate court must look to the totality of the circumstances surrounding the contest. *Eidell v. Workmen's Comp. Appeal Bd. (Dana Corp.)*, 624 A.2d 824, 826 (Pa. Cmwlth. 1993).

Here, while we acknowledge that Employer now seems to agree that Claimant sustained a work-related right hip/groin strain on September 28, 2015, we agree with the Board's conclusion that Employer's contest was not unreasonable because this litigation involved a right inguinal hernia and not a right hip/groin strain. Employer's conduct in issuing the NSTC and the NCD could have been the subject of a penalty petition and/or a request for attorneys' fees for unreasonable contest if Claimant had sought acknowledgement/compensation for both a work-related right inguinal hernia and a work-related right hip/groin strain.[5] In his Claim Petition, however, Claimant sought acknowledgement/compensation for only a work-related right inguinal hernia. By not including the work-related right hip/groin strain as part of his Claim Petition, Claimant essentially decided not to contest Employer's actions in issuing the NSTC and the NCD, thereby denying liability for a work-related right hip/groin strain. Thus, we must consider only whether Employer had a reasonable basis to contest Claimant's allegation that he sustained a work-related right inguinal hernia on September 28, 2015. On this issue, the Board reasoned:

_____

[5] Section 406.1 of the Act, Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1, sets forth the procedure that an employer must follow with respect to the issuance of notices of temporary compensation payable and notices stopping temporary compensation.

16

Although Dr. Bloch and Dr. Baskies both diagnosed Claimant with an inguinal hernia, there was a genuinely disputed issue as to whether Claimant sustained the inguinal hernia at work. [Employer] presented unequivocal medical testimony from Dr. Baskies that he did not. [Employer] also provided [an] extensive explanation from Dr. Baskies [as to] why he held that opinion, including the fact that neither Dr. Muto nor Dr. Beman were able to clinically palpate a hernia near the time of the incident. Although the WCJ did not credit [Employer's] medical evidence, it was nevertheless competent evidence which, if found credible by the WCJ, could have supported a denial of the Claim Petition for an inguinal hernia.

(Board's Decision at 11-12.) We agree with the Board's reasoning and the Board's conclusion that Employer's contest relative to the right inguinal hernia was not unreasonable. As a result, we cannot conclude that the Board committed an error of law by reversing the WCJ's award of attorneys' fees for unreasonable contest.

Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Koch,                                    :
                           Petitioner                :
                                                     :
          v.                                         :     No. 513 C.D. 2018
                                                     :
Workers' Compensation Appeal                         :
Board (Volvo Group North America,                    :
Inc.),                                               :
                           Respondent                :
                                                     :
Volvo Group North America, Inc.,                     :
                           Petitioner                :
          v.                                         :     No. 582 C.D. 2018
                                                     :
Workers' Compensation Appeal                         :
Board (Koch),                                        :
                           Respondent                :


# **O R D E R**


AND NOW, this 12th day of June, 2019, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.


_____
P. KEVIN BROBSON, Judge