# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Lehigh,                :
           Petitioner      :
                            :
       v.                     :     No. 1343 C.D. 2020
                            :     Submitted: July 16, 2021
Ashley Moyer (Workers'        :
Compensation Appeal Board),    :
           Respondent    :

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**          **FILED: December 13, 2021**

      The County of Lehigh (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated November 19, 2020. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), granting Ashley Moyer's (Claimant) claim petition and denying her penalty petition. For the reasons that follow, we affirm the Board's order.

## I.     BACKGROUND

      Claimant works for Employer as a corrections officer. On March 13, 2018, Claimant filed a claim petition[1] against Employer, asserting that she sustained a left

---

[1] With respect to a claim petition, the claimant bears the burden of proving all elements necessary for an award. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Pursuant to Section 301(c)(1) of the Workers' Compensation Act (Act), Act of

knee injury while working for Employer at the Lehigh County Jail on February 18, 2018, and that she was disabled as a result thereof. (Reproduced Record (R.R.) at 5a-7a.) Claimant sought total disability benefits from February 18, 2018, and ongoing. (*Id.* at 6a.) Employer filed an answer denying all allegations in the claim petition. (*Id.* at 8a-10a.) The matter was assigned to a WCJ for disposition.[2]

In support of her claim petition, Claimant testified before the WCJ at a hearing held on May 22, 2018. Claimant testified that, on February 18, 2018, she was working at the Lehigh County Jail as a corrections officer. She testified that her position as a corrections officer entails supervising inmates by performing irregular 30-minute rounds to ensure that prisoners are following the rules and regulations of the housing unit. (R.R. at 22a.) Claimant performs approximately 16 rounds per shift and spends substantial time on her feet, either standing behind a podium, walking, or traversing steps. (*Id*. at 23a.) On the morning of February 18, 2018, after descending a flight of steps, Claimant turned her body to the left to return to her podium, but her left foot remained planted while her left leg

June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1), an employee's injuries are compensable if they "(1) arise[] in the course of employment and (2) [are] causally related thereto." *ICT Grp. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 930 (Pa. Cmwlth. 2010) (quoting *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000), *appeal denied*, 788 A.2d 382 (Pa. 2001)). Further, an employee must demonstrate that she is disabled as a consequence of the work-related injury. *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Id.*

[2] Claimant also filed a penalty petition against Employer, alleging that Employer violated Section 406.1 of the Act, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1, by failing to conduct a prompt investigation of Claimant's reported injury. (R.R. at 1a-2a.) The WCJ denied the penalty petition at the same time he granted the claim petition. (WCJ's 6/17/2019 Decision at 9.) The WCJ's denial of the penalty petition is not at issue in this appeal, and, therefore, we do not address it further in this opinion.

turned with her body. (*Id*. at 24a-25a.) She felt a sharp pain down the inside of her left knee, but she continued walking to the podium because the pain went away and "there [were] male inmates all around." (*Id*. at 24a, 37a.) Claimant subsequently experienced pressure in her knee that she could not relieve, but she continued her work and finished her shift that day, albeit more slowly because of the discomfort. (*Id*. at 24a-26a, 44a.) She reported the knee injury to her sergeant and completed an incident report prior to finishing her shift. (*Id*. at 25a.) Although Claimant continued to experience discomfort in the form of constant pressure and the feeling of popping in her knee, she could still walk, so she did not go to the emergency room. (*Id.* at 26a.) Claimant reported to work the following day.

Claimant testified that, on February 20, 2018, she left work early and saw a doctor at OAA Orthopaedic Specialists (OAA). (*Id*. at 26a-27a.) A doctor at OAA ordered an X-ray, and, upon review of the X-ray, he took Claimant out of work for two weeks, which was subsequently extended for an additional six-week period. (*Id*. at 27a-28a.) Claimant had not returned to work as of the date of her testimony. (*Id*. at 28a.) Claimant received physical therapy treatment, which, she explained, exacerbated her discomfort. (*Id*. at 28a-29a.) She then stopped treatment at OAA and began seeing Barry Ruht, M.D., who put Claimant in a knee immobilizer during her first visit with him, which she wore for seven weeks. (*Id*. at 29a-30a, 45a.) Dr. Ruht also kept Claimant out of work and sent her back to physical therapy. (*Id.* at 31a.) Claimant testified that she had not experienced a knee injury prior to February 18, 2018, and that she continues to experience pressure and occasionally a sharp pain on the inside of her knee. (*Id*. at 32a.) Claimant further testified that, while she can drive, she can only walk for short periods of time before feeling discomfort. (*Id*. at 32a-33a.) Claimant stated that she does not feel she is capable

3

of returning to her regular job as a corrections officer because she cannot spend long periods of time on her feet. (*Id*. at 35a.)

Claimant also presented the August 15, 2018 deposition testimony of Dr. Ruht, who is board certified in orthopedic surgery. (*Id*. at 80a.) Dr. Ruht testified that he first treated Claimant on March 30, 2018, for complaints of pain on the inside of her left knee. (*Id*. at 82a-84a.) At that time, Dr. Ruht performed a physical examination of Claimant, which revealed a left antalgic gait, tenderness and left knee pain, swelling, and weakness. (*Id*. at 84a-85a.) In addition, he noted atrophy of the left quadriceps, patella femoral crepitus with palpable effusion, and visible synovial thickening. (*Id*. at 85a.) Dr. Ruht believed that Claimant's kneecap was not properly tracking. (*Id*. at 85a-86a.) As part of his initial evaluation of Claimant, Dr. Ruht also reviewed a magnetic resonance image (MRI) of Claimant's left knee, which was performed on March 23, 2018. (*Id*. at 86a.) Dr. Ruht explained that the MRI revealed lateral patella tilt, lateral subluxation, effusion, arthritis of the kneecap, and rupture of the retinacular. (*Id*. at 86a-87a.) According to Dr. Ruht, these findings correlated with Claimant's complaints and the mechanism of injury. (*Id*. at 88a.) Dr. Ruht ultimately diagnosed Claimant with the following: dislocation of the left patella, effusion in the left knee, pain in the left knee, limp, and arthritis in the kneecap femur joint. (*Id.* at 88a-89a.) He recommended a knee brace and the medication Naproxen, which Claimant had previously been prescribed. (*Id*. at 89a.) Over the six occasions Dr. Ruht saw Claimant, she improved clinically, but he maintained the restrictions on her ability to work. (*Id*. at 90a-92a.) Dr. Ruht advised Claimant that if her patella femoral symptoms continued, he would recommend arthroscopy involving reconstruction of the patella femoral ligament. (*Id*. at 93a-94a.) While Claimant's condition has improved, she continues to have

patella femoral syndrome, a deconditioning of the quadriceps, and arthritis of the patella femoral joint, the latter of which Dr. Ruht testified was either caused or aggravated by her February 18, 2018 injury.[3]  (*Id*. at 108a-09a.)

In opposition to Claimant's claim petition, Employer presented the October 17, 2018 deposition testimony of Robert W. Mauthe, M.D., who is board certified in physical medicine, rehabilitation, and electrodiagnostic medicine. (*Id*. at 176a.)  Dr. Mauthe examined Claimant on June 15, 2018, which included reviewing Claimant's medical records and diagnostic studies, obtaining a history, and performing a physical examination.  (*Id*. at 178a-79a.)  Dr. Mauthe reviewed Claimant's March 2018 MRI and, subsequently, a September 2018 MRI, which had not changed from the March MRI.  (*Id*. at 179a.)  Dr. Mauthe testified that Claimant's recounting of her history to him was consistent with her testimony before the WCJ.  (*Id*. at 179a-80a.)  Dr. Mauthe offered the following opinions regarding Dr. Ruht's findings:  (1) Claimant's effusion is minimal and not pathologic; (2) Claimant suffers from chondromalacia of the patella and not post-traumatic arthritis, "which is very common in women, and is really not a pathologic finding"; (3) Claimant has not experienced a rupture of her medial extensor retinaculum, as it is not on the MRI and she would have been unable to ascend and descend stairs had she ruptured that ligament; and (4) Dr. Mauthe's measurement of Claimant's quadriceps indicates "someone who has patella

---

[3] In addition, Claimant offered the deposition testimony of Danielle Fagan, an adjuster employed by Employer's workers' compensation insurance provider.  Ms. Fagan testified that she had recently taken over the handling of Claimant's file.  (R.R. at 129a.)  She was unable to testify about the investigation regarding Claimant's injury, and she had not reviewed any of Claimant's records and, therefore, was unable to testify about why Employer issued a notice of denial to Claimant.  (*Id*. at 129a-31a.)  Ms. Fagan merely scheduled Claimant's independent medical examination (IME).  (*Id*. at 129a-30a.)  The WCJ summarized Ms. Fagan's testimony and found it "perfectly credible, but largely irrelevant" to his decision.  (WCJ's 6/17/2019 Decision at 5.)

chondromalacia" and not someone in need of knee replacement. (*Id*. at 182a-84a.) Dr. Mauthe's physical examination of Claimant revealed no swelling, atrophy, temperature change, instability, or reduction in range of motion. (*Id*. at 184a-86a.) He concluded, within a reasonable degree of medical certainty, that Claimant "had a normal orthopedic examination with no evidence of pathology in the knee." (*Id*. at 187a.) Dr. Mauthe also reviewed the jail surveillance video taken on the day of Claimant's injury and observed her "going up and down stairs without any problems" or interruption in her gait. (*Id*. at 191a.) Dr. Mauthe also observed that Claimant appears to be "agile, [and] very athletic." (*Id*. at 192a.) Dr. Mauthe stated that he did not see any evidence on the video footage of Claimant being injured on February 18, 2018, and did not find evidence of injury on the date he physically examined her. (*Id*. at 193a-95a.) Dr. Mauthe opined that even if the WCJ was to conclude that Claimant sustained a work injury on February 18, 2018, Claimant was recovered from that injury as of June 15, 2018, the date of his examination of Claimant. (*Id.* at 195a.) On cross-examination, Dr. Mauthe admitted that the doctor at OAA ordered an MRI, placed Claimant on restrictions, put her in a leg brace, and determined that Claimant suffered a work-related injury.[4] (*Id*. at 197a-202a.)

---

[4] Employer also presented the September 21, 2018 deposition testimony of Darbe George, Employer's Human Resource Administrator. Ms. George testified about the timeline of Employer's investigation of Claimant's injury, including her request that the Lehigh County Jail's Deputy Warden, Robert McFadden (Deputy Warden McFadden), review the jail's surveillance video taken on the date of the injury. (R.R. at 146a-50a.) According to Ms. George, Deputy Warden McFadden informed her that he did not see any evidence of an injury based on the surveillance video. (*Id*. at 150a.) Ms. George also reviewed the video and saw no evidence of injury. (*Id*. at 151a-53a.) Based solely on Deputy Warden McFadden's and Ms. George's review of the surveillance video, Ms. George recommended to Employer's insurance carrier that Claimant's claim be denied. (*Id*. at 153a-54a, 159a.) The WCJ found Ms. George's testimony credible, concluding it established that Employer promptly investigated the matter prior to issuing the notice of denial. (WCJ's 6/17/2019 Decision at 6.)

A second hearing was held before the WCJ on July 26, 2018, at which Deputy Warden McFadden testified. He explained that he reviewed the jail's surveillance video on the date and time of Claimant's injury, and he did not see any interruption in her stride. (*Id*. at 63a-64a.) In fact, Deputy Warden McFadden observed Claimant ascending stairs in "double-time" and with a "bounce" in her step. (*Id*. at 66a-67a.)

By decision and order dated June 17, 2019, the WCJ granted Claimant's claim petition and denied her penalty petition.[5] In so doing, the WCJ made the following relevant findings and credibility determinations:

> 6. The Employer . . . offered the credible testimony of Deputy Warden . . . McFadden, who authenticated and verified the video at the hearing of July 26, 2018. On his review, he noted no interruption in the Claimant's stride. He noted at least one occasion when the Claimant went upstairs, "in a double time, a bounce."[] He believed there was no difference in the Claimant's ambulation throughout her shift. Based on his authentication, the DVDs containing the recordings were placed in evidence.
>
> 7. We have observed the recordings of the Claimant's work day in detail. We note the obvious that the recordings are not as clear and crisp as they might be. They certainly lack the production values of commercial recordings. Nonetheless, it is impossible to corroborate the occurrence of the Claimant's injury on these recordings. If the Claimant felt pain[,] she did not show it. It is very

---

[5] The WCJ initially issued an order on March 25, 2019, granting the claim petition and denying the penalty petition. (Certified Record (C.R.) at Item No. 8.) Both parties appealed, arguing that the decision was not reasoned because it did not contain findings of fact and conclusions of law. (C.R. at Item Nos. 9, 11.) The Board agreed with the parties and remanded the case to the WCJ for him to promptly issue a new decision and order containing findings of fact and conclusions of law. (C.R. at Item No. 13.) The WCJ acknowledged the apparent error in his June 17, 2019 decision, noting that the absence of any findings of fact and conclusions of law in his March 25, 2019 decision and order "remains a digital mystery, a cloud conundrum." (WCJ's 6/17/2019 Decision at 3.)

clear that on the day of injury at least, if the Claimant felt pain it did not disable her in any way. We further note that Dr. Ruht offered no opinions based on these recordings. Consequently, we are most reluctant to find any medical evidence in these recordings as the Claimant's own medical expert has not done so.

8. The testimony of [Claimant] is credible in part. To the extent she testified that she hurt her knee in the course of her employment on February 18, 2018, her testimony is credible, as is her testimony that she promptly reported the injury and underwent treatment at OAA. The treatment was itself corroborative of the occurrence of an injury in that swelling and atrophy were both noted during her treatment; however, to the extent the Claimant considers herself to be disabled from her employment as of the date of examination by Dr. Mauthe, her testimony is not credible in light of the expert medical opinion of Dr. [] Mauthe and the lack of any findings as of the time of his examination. We recognize that the Claimant testified three weeks before her examination by Dr. Mauthe.

9. To the extent the medical experts disagree, the opinion of Dr. Ruht is credible that the Claimant injured her knee at work on February 18, 2018[,] and was disabled thereby with a diagnosis of dislocation of the left patella, effusion[,] and pain. To the extent he found continuing disability and further diagnoses including: patellofemoral syndrome, arthritis of the patellofemoral joint[,] and a rupture of the medial extensor retinaculum, his testimony is not credible. These findings are made in consideration of the credible portions of the expert medical opinions of Dr. [] Mauthe, the lack of support by the objective testing of [an] MRI, Dr. Ruht's failure to explain the Claimant's ability to perform her job including bouncing up stairs even after the alleged rupture of the retinaculum[,] and the complete lack of findings as of Dr. Mauthe's examination. The opinion of Dr. Mauthe that the

8

Claimant was no longer suffering from any work injury as of the time of his examination is entirely credible and is accepted as fact as are his opinions that the Claimant never incurred most of the [injuries] described by Dr. Ruht including chondromalacia of the left patella, rupture of the medial extensor retinaculum, arthritis[,] and aggravation of arthritis.

. . . .

11. The Claimant is entitled to payment of compensation for total disability from the date of the injury until the date of Dr. Mauthe's examination.

(WCJ's 6/17/2019 Decision at 6-7.) Based on these relevant findings and credibility determinations, the WCJ essentially concluded that: (1) Claimant met her burden of proving that she sustained a disabling injury to her left knee as a result of the February 18, 2018 work-related incident and that she was entitled to benefits through the date of Dr. Mauthe's examination. Employer appealed to the Board, which affirmed the WCJ's decision. Employer then petitioned this Court for review.

## II.    ARGUMENTS ON APPEAL

On appeal,[6] Employer argues that the Board erred by affirming the WCJ's decision granting Claimant's claim petition because the WCJ arbitrarily and capriciously disregarded substantial, incontrovertible evidence of record, *i.e.*, the jail surveillance video, which, according to Employer, proves that Claimant did not sustain any work-related injury on February 18, 2018. Employer also argues that

---

[6] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated." *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009). A review for capricious disregard of material competent evidence is an appropriate component of appellate consideration in every case in which the question is properly brought before the Court. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

9

the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act,[7] in part due to the WCJ's alleged capricious disregard of the video evidence.

## III. DISCUSSION

### A. Capricious Disregard of Evidence

A capricious disregard of evidence occurs only when the WCJ ignores competent, relevant evidence. *Armitage v. Workers' Comp. Appeal Bd. (Gurtler Chems.)*, 842 A.2d 516, 519 n.4 (Pa. Cmwlth. 2004). A capricious disregard of evidence has been characterized as "a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth.), *appeal denied*, 887 A.2d 1243 (Pa. 2005). Thus, when determining whether the WCJ capriciously disregarded evidence, the Court must decide if the WCJ willfully or deliberately ignored evidence that any reasonable person would have considered to be important in reaching a result. *See Bennett v. Unemployment Comp. Bd. of Rev.*, 33 A.3d 133, 136 n.3 (Pa. Cmwlth. 2011).

Employer argues that the WCJ and the Board capriciously disregarded the video evidence submitted by Employer, which Employer characterizes as establishing that Claimant did not sustain a work-related injury on the day in question. Claimant responds that the WCJ did not disregard or ignore the video evidence, as the WCJ reviewed the video and summarized its content and explained the evidentiary weight he gave to the video in finding of fact number 7.

A review of finding of fact number 7 reveals that the WCJ indeed commented on the quality of the video recording, implied that the video was of poor quality, and found it impossible to corroborate the occurrence (or lack thereof) of an injury based on the video. Thus, it appears that Employer actually takes issue with the WCJ's

---

[7] 77 P.S. § 834.

decision to give little weight to the video for purposes of determining whether a work-related injury occurred. In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As factfinder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* We, therefore, may not reweigh the evidence or the credibility of the witnesses but must "simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole." *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). For these reasons, we cannot conclude that the WCJ capriciously disregarded the video evidence, as the WCJ specifically addressed the video in his decision and chose to accord it only some weight in his decision, as discussed below.

## B. Reasoned Decision

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every piece of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned

11

decisions so that this Court does not have to "imagine" the reasons why a WCJ finds that the testimony of one witness was more credible than the testimony of another witness. *Id*. at 196 (quoting *Lewis v. Workers' Comp. Appeal Bd. (Disposable Prods.)*, 853 A.2d 424, 429 (Pa. Cmwlth. 2004)). Thus, "[w]hen faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." Section 422(a) of the Act. Setting aside Employer's contention that the WCJ capriciously disregarded video evidence, the crux of Employer's remaining argument that the WCJ's decision is not reasoned focuses on finding of fact number 7, which Employer contends is irrational and inconsistent with several other findings.

Employer maintains that finding of fact number 7 is irrational to the extent that it criticized the quality of the video recordings and impliedly determined that the video does not corroborate the lack of occurrence of any work injury on the day in question. Employer essentially contends that the video itself precludes a finding that Claimant was injured on February 18, 2018, and, therefore, the WCJ failed to issue a reasoned decision. In support of this position, Employer points to the WCJ's statement that the video "recordings are not as clear and crisp as they might be." (Employer's Brief (Br.) at 17 (quoting WCJ's 6/17/2019 Decision at 6).) Employer describes the video as "state of the art digital recordings" that the WCJ declined to view at the hearing. (*Id*.) Employer surmises that the WCJ's equipment for viewing the recordings was "subpar" based on his description of the recordings. (*Id*.) Employer also contends that the WCJ's reasoning for attributing little evidentiary weight to the video evidence, as explained in finding of fact number 7, is "[]irrational[] and simply does not make any sense." (*Id.* at 17-18.) Employer further dissects finding of fact number 7 in an attempt to show its flawed reasoning,

asserting two additional bases as support for its argument. First, Employer's expert, Dr. Mauthe, reviewed the video and provided "sound medical evidence" proving that the video does not support the occurrence of a work injury. (*Id.* at 18.) Second, Claimant's expert, Dr. Ruht, offered no opinion about the video evidence because, as he testified on cross-examination, he was unaware of the video. Employer maintains that, because Dr. Ruht was not presented with the video evidence prior to him rendering an opinion on the matter, the foundation of his causation opinion is faulty.

In addition, Employer argues that several of the WCJ's findings are inconsistent with finding of fact number 7, including: (1) finding of fact number 4(e), describing Dr. Mauthe's testimony that the video showed Claimant moving quickly and with agility and athleticism; (2) finding of fact number 5, describing Ms. George's credible testimony that Employer's investigation included a prompt review of the video and Deputy Warden McFadden's conclusion that the video showed no evidence of injury or any change in Claimant's gait; and (3) finding of fact number 6, describing Deputy Warden McFadden's credible testimony that the video showed no difference in Claimant's ambulation throughout her shift. According to Employer, the testimony of its witnesses describing the content of the video, which constitutes uncontroverted evidence that "is not subject to 'credibility determinations,'" discredits Claimant's account of, and Dr. Ruht's evaluation of, Claimant's alleged injury. (*Id.* at 21-36.) As uncontroverted evidence, according to Employer, the WCJ was required under Section 422(a) of the Act to adequately explain his reasons for rejecting the evidence, but, instead, he "summarily disregarded and ignored the video evidence." (*Id.* at 26, 29.)

13

Claimant counters that the WCJ "satisfied the reasoned decision requirement by clearly and concisely stating and explaining the rationale for his decision concerning the video and acted within his discretion to limit the weigh[t] which he placed upon the footage." (Claimant's Br. at 11-12.) Claimant further contends that "the video does not constitute irrefutable evidence that an injury did not occur" and points out that the WCJ was not bound to accept the video to establish lack of injury, as a WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. (*Id*. at 11.) As such, Claimant asserts that the Board did not err in affirming the WCJ's decision.

Our review of the WCJ's decision reveals that the WCJ interpreted the video as merely showing that Claimant *did not exhibit outward signs of injury on that day*, with other credible evidence indicating that she was in fact injured. Thus construed, finding of fact number 7 is neither illogical nor inconsistent with the WCJ's other findings—*i.e.*, the WCJ rejected Employer's testimonial evidence that Claimant was not injured. Moreover, in finding of fact number 9, the WCJ accepted the video evidence showing Claimant "bouncing up the stairs" and used it as a basis to reject Dr. Ruht's opinion that Claimant suffered a rupture of the retinaculum. Thus, it is apparent that the WCJ addressed and discussed the video evidence in finding of fact number 7 and used the video evidence to reject Claimant's claim of continuing disability in finding of fact number 9. Because credibility determinations and questions that pertain to the weight to be afforded evidence are within the sound discretion of the WCJ, *Williams*, 862 A.2d at 143, we cannot conclude that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act.

## IV.  CONCLUSION

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, President Judge

Judge Fizzano Cannon did not participate in the decision of this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

County of Lehigh,                                :
                          Petitioner             :
                                                 :
          v.                                     :    No. 1343 C.D. 2020
                                                 :
Ashley Moyer (Workers'                           :
Compensation Appeal Board),                      :
                          Respondent             :

# **O R D E R**

AND NOW, this 13th day of December, 2021, the order of the Workers'
Compensation Appeal Board, dated November 19, 2020, is hereby AFFIRMED.

_____
P. KEVIN BROBSON, President Judge